0740

Charles Keith PALMER, Respondent v. Diana A. PALMER, Appellant.

(345 S. E. (2d) 746)

Court of Appeals

*Kermit S. King* and *Carol S. Holstein,* of *King & Cobb,* Columbia, *for appellant.*

*David W. Keller, Jr.,* and *Kenneth Eaton,* of *McGowan, Keller, Eaton, Brodie & Elmore,* Florence, *for respondent.*

Heard May 20, 1986.

Decided June 23, 1986.

SHAW, Judge:

Appellant Diana A. Palmer appeals a family court order granting respondent Charles Keith Palmer's petition to terminate her alimony. We affirm.

In reviewing cases from the family court, this court may find facts in accordance with its own view of the preponderance of the evidence. *Walker v. Frericks*, 285 S. C. 139, 328 S. E. (2d) 126 (Ct. App. 1985).

These parties, after a nineteen year marriage, were divorced in November, 1978. The divorce decree required Charles to pay Diana $600.00 per month alimony. In September, 1981, the alimony was increased to $750.00 per month pursuant to a court order based on a change in Diana's financial circumstances. In December, 1984, the alimony was terminated by court order. The family court judge found Diana's financial circumstances had changed for the better, warranting the termination under S. C. Code Ann. § 20-3-170 (1976), as amended.

Diana claims the family court erred in terminating her alimony because the record fails to show any real and substantial change in her financial circumstances. We disagree.

In September, 1983, Diana voluntarily left her job as a schoolteacher to work for John McKee, a farmer and businessman. McKee pays her $1,200.00 per month which is slightly less than she earned as a schoolteacher. Diana then rented her home in Florence (the former marital home of Diana and Charles), for a nominal fee to Danny and Kathy Kidd from September of 1983 until January of 1984. Danny Kidd testified Diana told him she was leaving her teaching position to "live with this man John McKee and that he would support her financially or pay her teacher's salary, you know, for services rendered." This testimony was uncontradicted.

Diana testifed that during the time she rented her home, she was with McKee at his various business locations, including Mississippi and Tennessee. During this same period Diana, on occasion, stayed at her home in Florence pursuant to an agreement with the Kidds. McKee occasionally stayed there with her. Diana testified her services for McKee include coordinating social activities, maintaining the household and yard, working in the office, and generally anything McKee does not have time to do. She frequently accompanies

him on business trips, particularly to Paraguay, where he owns a ranch. While in Paraguay, Diana is in charge of the house. She supervises the preparation of meals, helps with the house cleaning, and accompanies McKee when he goes to check on his projects.

Diana and McKee also travel to Hilton Head and Las Vegas. McKee pays for Diana's expenses on all of these trips. McKee also provides Diana with two cars for her use in Florence. He gave her a fur coat which she values at $3,000.00.

The family court, exercising the discretion granted to it by § 20-3-170 (1976), as amended, found the above facts constitute an improvement in Diana's economic circumstances resulting from her relationship with McKee. We cannot say the family court judge abused his discretion.

This court upheld a family court order substantially reducing a former wife's alimony based on her improved financial standing resulting from her cohabitation with a man. *Vance v. Vance*, 287 S. C. 612, 340 S. E. (2d) 554 (Ct. App. 1986). We agree with the reasoning expressed by the *Vance* court, "Living with another, whether it is with a live-in lover, a relative, or a platonic housemate, changes the wife's circumstances and alters her required financial support." 340 S. E. (2d) 554, 555 (Ct. App. 1986).

While we acknowledge the facts of the instant case and *Vance* are not identical, we hold the reasoning of *Vance* is applicable here. Diana testified she spends only eight to ten days a month in her home. There is ample testimony in the record to show McKee often stays in her home with her on these days. Diana admits to sleeping with McKee. While Diana attempts to cloak her relation to McKee in terms of an employment situation, it is patent from the record they enjoy a close personal and emotional relationship.

The *Vance* court adopted Justice Littlejohn's reasoning in his concurring opinion in *Jeanes v. Jeanes*, 255 S. C. 161, 177 S. E. (2d) 537 (1970) where he wrote, "She [the wife] has entered into a sphere of living which involves a change of circumstances as contemplated by the ... [legislature]." Likewise, we find Diana's circumstances have changed as contemplated by § 20-3-170 (1976), as amended.

Diana also claims the court erred in terminating her alimony based on the gratuitous contributions of a third party. She relies on *Prince v. Prince*, 285 S. C. 203, 328 S. E. (2d) 664 (Ct. App. 1985) in support of her position. *Prince* held a court cannot consider contributions to the wife's support by her relatives since alimony replaces the husband's duty to support his wife. We distinguish *Prince* from the present case because, in this case, the third party is a paramour. Thus, as we have already stated, we hold his contributions constitute a change in circumstances as contemplated by the legislature. As to the gratuitous nature of McKee's contributions, Diana can seek reinstatement of the alimony if her financial condition deteriorates.

Finally, Diana claims the family court erred in refusing to require Charles to pay her attorneys' fees. The award of attorneys' fees is a discretionary matter with the family court. *Nienow v. Nienow*, 268 S. C. 161, 232 S. E. (2d) 504 (1977). We find no abuse of this discretion.

Affirmed.

SANDERS, C. J., and BELL, J., concur.