# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 94-CA-00513-SCT

*SALLY SAYLE WEATHERSBY*

*v.*

*JOHN M. WEATHERSBY*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/10/94 |
| TRIAL JUDGE: | HON. GERALD E. BRADDOCK |
| COURT FROM WHICH APPEALED: | SUNFLOWER COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | DANA J. SWAN |
| | RALPH E. CHAPMAN |
| ATTORNEY FOR APPELLEE: | LELAND H. JONES, III |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 5/15/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 6/5/97 |

**BEFORE DAN LEE, C.J., PITTMAN AND MILLS, JJ.**

**MILLS, JUSTICE, FOR THE COURT:**

¶1. The Chancery Court of Sunflower County on May 10, 1994, ordered Sally S. Weathersby (Sally) to convey her one-half interest in the marital home to her ex-husband, John M. Weathersby (John). The Chancellor also refused to reinstate alimony by John to Sally. On appeal, Sally assigns as error the following issues.

**1. Whether the Chancellor erred in refusing to reinstate alimony by John Weathersby to Sally Weathersby after it had been terminated.**

**2. Whether the cohabitation clause in the divorce settlement providing for the termination of alimony was contrary to Mississippi law and void as a matter of public policy.**

**3. Whether the Chancellor erred in ordering Sally Weathersby to convey her one-half interest in the marital home to John Weathersby.**

**4. Whether the Chancellor erred in crediting voluntary payments made by John**

**Weathersby towards the amount he owed in exchange for Sally Weathersby's interest in the home.**

**5. Whether the Chancellor erred in refusing to order an equitable distribution of marital assets.**

## FACTS

¶**2.** Sally S. Weathersby and John M. Weathersby, after 29 years of marriage, were divorced on March 8, 1990, based on irreconcilable differences. The divorce settlement agreement provided for a division of property as well as periodic alimony. The decree provided for property division as follows:

1. The parties own jointly a house and lot in Indianola, Mississippi, which was their marital residence. Wife will convey to Husband now her undivided one-half interest therein, for thirty percent of the present fair market value of said property as determined by appraisal. The method of appraisal shall be that each party shall select one appraiser, which two appraisers shall then select a third appraiser, with the parties to be bound by the fair market value figure finally arrived at by said three appraisers. Husband will pay to Wife as consideration for said conveyance beginning on the 15th day of the month immediately following the date of such conveyance, monthly over a period of five years at no interest, a figure equal to thirty percent of such appraised value.

¶3. As to periodic alimony, the settlement provided that John would pay to Sally $2,500 per month for ten years. A cohabitation clause in the settlement provided:

Wife will forfeit her right to said alimony and all other rights herein except as to said residence, by cohabitation without marriage with a member of the opposite sex, or by remarriage or death.

¶4. On October 11, 1991, in response to a joint petition alleging that Sally was cohabiting without marriage with another man, the court entered a Consent Order of Modification relieving John of his alimony obligations pursuant to the divorce settlement's cohabitation clause.

¶5. On July 23, 1993, John filed a Motion for Citation for Contempt requesting that Sally be required to convey to him her one-half interest in the marital residence. On December 15, 1993, Sally filed a Counterclaim seeking reinstatement of periodic alimony and an equitable division of marital assets.[1] After a hearing on April 4, 1994, the Chancellor ordered Sally to convey her one-half interest in the marital home to John, and refused to reinstate John's alimony obligations. In addition, the Chancellor found that John had made voluntary payments to Sally in excess of that which he owed her for her share in the marital home, thereby satisfying said debt. Finally, the Chancellor denied Sally's request for an equitable division of marital assets.

## DISCUSSION OF THE LAW

**1. Whether the Chancellor erred in refusing to reinstate alimony by John Weathersby to Sally Weathersby after it had been terminated.**

¶6. Sally argues that the Chancellor erred in refusing to reinstate her alimony payments by John. She first apparently disputes that she ever lived in cohabitation with another man in violation of the divorce settlement, citing *Cutrer v. State*, 154 Miss. 80, 121 So. 106 (1929), for the proposition that evidence of sexual intercourse, without a showing of cohabitation, is insufficient to prove cohabitation. Sally overlooks the fact that she herself joined in the petition alleging that she was cohabiting with another man in violation of the agreement.

¶7. Sally also places much stock in the cases of *Hammonds v. Hammonds*, 641 So. 2d 1211 (Miss. 1994), and *Hammonds v. Hammonds*, 597 So. 2d 653 (Miss. 1992), for the propositions that cohabitation alone is not a complete bar to an ex-spouse's receiving alimony, and that approaches to alimony modification should be reasonable and flexible in the event of cohabitation by the recipient ex-spouse. These cases are easily distinguishable from the instant case. In these cases there was no clause incorporated into the divorce decree whereby the ex-wife would forfeit her right to alimony by cohabiting with another man.

¶8. Sally reiterates to this Court that periodic alimony is subject to modification upon proof of material changes in circumstances. *Taylor v. Taylor*, 392 So. 2d 1145, 1147 (Miss. 1981). This applies to a divorce based upon irreconcilable differences. *Hemsley v. Hemsley*, 639 So. 2d 909 (Miss. 1994). The thrust of Sally's argument is that the Chancellor erroneously denied Sally's counterclaim to reinstate alimony under the assumption that alimony may not be reinstated after it has been terminated. Sally quotes the Chancellor at trial:

> BY THE COURT:
>
> Can you change it, though, Mr. Chapman, after you have terminated it?
>
> BY MR. CHAPMAN:
>
> I think you can, your Honor, because it was modified once. What's to say it can't be modified again if the circumstances dictate.
>
> BY THE COURT:
>
> I will have to agree that it's somewhat odd that the word modification was used, but it was actually a termination. I'm just speaking. I know of no law that allows for further modification after it is terminated unless you can show me some.

¶9. The appellant provides no cases decided by this Court where alimony was reinstated after it was terminated.

¶10. The Chancellor in his order stated:

> This Court finds that the joint petition of the parties and Decree terminating alimony for Defendant's cohabitation was a forfeiture of her right to future alimony by her repudiation of the right thereto and same cannot be reinstated.

The order cited *McRae v. McRae*, 381 So. 2d 1052, 1055 (Miss. 1980), where this Court affirmed the Chancellor's termination of alimony, finding that the ex-wife, by her admitted cohabitation with

another man, "forfeited her right to alimony by her repudiation of the right thereto." It is significant in the instant case, that the alimony was terminated not only because of Sally's admitted cohabitation, but also pursuant to a clause in the divorce settlement freely agreed to by both parties, and upon a joint petition filed by both parties. Where the ex-spouse has cohabited with a member of the opposite sex in violation of a cohabitation clause in the divorce settlement reached by the parties, and alimony is then terminated in accordance with that clause, the Chancellor shall refuse to later reinstate alimony.

### 2. Whether the cohabitation clause in the divorce settlement providing for the termination of alimony was contrary to Mississippi law and void as a matter of public policy.

¶11. Sally argues that the cohabitation clause in the divorce settlement providing for the termination of alimony was contrary to Mississippi law and void as a matter of public policy in that it attempted to deprive the chancery court of authority to hear a plea for alimony modification. Indeed, this Court has held that "the parties may not by contract, court-approved or otherwise, deprive the court of authority to hear a plea for modification of periodic alimony." *Bell v. Bell*, 572 So. 2d 841, 845 (Miss. 1990). However, Sally 's plea was not one for modification of alimony, but rather for reinstatement of alimony some 22 months after it had been forfeited by her. Certainly, had Sally moved for modification of the alimony prior to its termination, the cohabitation clause in the divorce settlement in no way would have prevented the Chancellor from considering such motion. The clause provided simply that Sally would forfeit her right to alimony upon her cohabitation without marriage with a member of the opposite sex.

¶12. This Court has stated its policy on enforcing divorce settlements as follows:

> In property and financial matters between the divorcing spouses themselves, there is no question that, absent fraud or overreaching, the parties should be allowed broad latitude. When the parties have reached agreement and the chancery court has approved it, we ought to enforce it and take as dim a view of efforts to modify it, as we ordinarily do when persons seek relief from their improvident contracts.

*Bell*, 572 So. 2d at 844 (citing *Osborne v. Bullins*, 549 So. 2d 1337, 1339 (Miss. 1989); *Morris v. Morris*, 541 So. 2d 1040 (Miss. 1989)). Sally has alleged no fraud, and her claim that she was overreached by John was dismissed by the Chancellor, which order this Court previously affirmed. *Weathersby v. Weathersby*, 667 So. 2d 30 (Miss. 1995).

¶13. A cohabitation clause providing for the forfeiture of future alimony does not attempt to deprive the chancery court of its authority to hear pleas for the modification of alimony. The cohabitation clause in the instant settlement agreement was not contrary to law or void as against public policy.

### 3. Whether the Chancellor erred in ordering Sally Weathersby to convey her one-half interest in the marital home to John Weathersby.

¶14. Regarding the marital home, the divorce settlement provided:

> Wife will convey to Husband now her undivided one-half interest therein, for thirty percent of

the present fair market value of said property as determined by appraisal. The method of appraisal shall be that each party shall select one appraiser, which two appraisers shall then select a third appraiser, with the parties to be bound by the fair market value figure finally arrived at by said three appraisers.

¶15. At trial, it was shown that this procedure for determining the value of the residence was not utilized by the parties. Instead, John obtained the services of two appraisers, who appraised the property at $125,000 and $130,000, respectively. Sally never selected an appraiser. John testified that he accepted the higher appraisal, $130,000, the thirty percent of which he owed to Sally thus being $39,000. At trial, Sally testified that she believed the fair market value of the property to be $165,000, and thus she was entitled to $49,500 from John. The Chancellor adopted Sally's appraisal and ordered her to convey her one-half interest in the home to John.

¶16. Sally argues that since the terms in the settlement agreement providing for the appraisal of the fair market value of the property were not complied with, the Chancellor erred in ordering Sally to convey her interest in the home to John. John urges that the clear language of the agreement, "Wife will convey to Husband now her undivided one-half interest therein" (emphasis added), provided the Chancellor with the necessary authority to order Sally to convey her interest in the property to John.

¶17. We must determine exactly what the settlement agreement required, which interpretation shall be under a *de novo* standard. **Webster v. Webster**, 566 So. 2d 214, 216 (Miss. 1990). Leaving aside for the moment the issue of the noncompliance with the appraisal method set out in the agreement, a final appraisal of the property was not a condition precedent to Sally's conveyance of her interest therein. John was to pay thirty percent of the fair market value of the property in monthly payments over five years, beginning on the 15th day of the month immediately following the date of the conveyance. It was therefore necessary only that the appraisal be done sometime before the 15th day of the month immediately following the conveyance. Also, the language, "Wife will convey to Husband now" (emphasis added), indicates that Sally was to convey her interest in the property immediately. It was not error for the Chancellor to order Sally to convey her interest in the marital home to John.

¶18. Property settlement agreements are fixed and final, and may not be modified absent fraud or contractual provision allowing modification. **Mount v. Mount**, 624 So. 2d 1001, 1005 (Miss. 1993); **Brown v. Brown**, 566 So. 2d 718, 721 (Miss. 1990); **East v. East**, 493 So. 2d 927, 931-32 (Miss. 1986). However, the parties may waive specific provisions by failing to carry out their own responsibilities. Such waiver occurred here where Sally failed to choose an appraiser, and as provided in the agreement, and then offered her own appraisal at trial over the objection of John. She has now lost the right to object to the Chancellor's reliance on her appraisal at trial.

**4) Whether the Chancellor erred in crediting voluntary payments made by John Weathersby towards the amount he owed in exchange for Sally Weathersby's interest in the home.**

¶19. The Chancellor found that since the divorce, John made various voluntary payments to Sally which included: a $17,276 payment in 1990 as a down payment for a condominium purchased by Sally in Memphis, Tennessee; excess payments of $4,739 in 1990, $5,160 in 1991, and seven payments of $1,500 in 1992; other payments of $4,357 in 1993 and $2,358 for Sally's car payments,

utilities, taxes, and bank overdrafts; and other car payments for Sally's car totaling $6,547. The total excess payments amounted to $50,937, which was more than the $49,500 which the court found John owed Sally for her interest in the marital home. The Chancellor credited these payments towards the $49,500 owed, and found that John had paid in full what he owed in exchange for Sally's interest in the home.

¶20. Sally argues these payments should not have been credited towards the amount which John owed her in exchange for her interest in the marital home. John testified there was an understanding between the two that the payments were to be credited towards his debt for Sally's interest in the home. Sally testified there was no such understanding, but rather "he told me, he said, 'I'll take care of you, don't worry about it. I'll provide for you.'" Both John and Sally testified these payments were made because the couple's children asked John to continue to provide support for Sally after her alimony was terminated. Apparently none of the payments were marked or designated as payments towards John's debt on Sally's interest in the home.

¶21. These facts are very similar to those presented in *McHann v. McHann*, 383 So. 2d 823 (Miss. 1980), wherein Ms. McHann filed a petition to cite her ex-husband for contempt for failure to pay alimony. Mr. McHann testified he had paid his ex-wife, as an advance on alimony, a sum in excess of $4,700 consisting of such things as house payments, utility bills, automobile insurance and taxes. *McHann*, 383 So. 2d at 825. He argued that he had overpaid the amount due his ex-wife in excess of $1,900 as of the time she filed her petition for contempt. *Id.* Ms. McHann denied the payments were made as an advance on alimony and contended they were made voluntarily. *Id.* The chancellor held that Mr. McHann was entitled to credit for the payments and that he had paid an amount in excess of that required to be paid in the divorce decree. *Id.* This Court affirmed, stating:

> The chancellor made his finding based on conflicting testimony, and under the well established rule that we do not reverse a chancellor for finding of fact unless his findings are clearly against the weight of the evidence, we affirm and hold that the petition for citation for contempt was properly dismissed.

*McHann*, 383 So. 2d at 825.

¶22. Likewise, the chancellor below made his determination based on conflicting testimony. Under our standard of review in this situation, we are inclined to defer to the discretion of the chancellor. Accordingly, we hold the chancellor did not err in crediting the payments made by John Weathersby towards the amount he owed his ex-wife for her interest in the marital home.

**5) Whether the Chancellor erred in refusing to order an equitable distribution of marital assets.**

¶23. Paragraph 6 of the divorce settlement provided:

> As to any separately owned property that either party may own and which is not herein specifically mentioned, the same shall be deemed the exclusive property of such individual owner. As to any jointly owned property other than the aforesaid marital residence, such property will be equitably divided between the parties.

¶24. The Chancellor denied Sally's request for an equitable distribution of marital assets, finding that such property had already been equitably divided by the parties as reflected by Exhibit 10. Exhibit 10 consisted of four legal pad pages executed by the parties on September 5, 1990, and which listed items of personal property. Pages 1 and 4 were headed by the name "Sally," and pages 2 and 3 were headed by the name "John."

¶25. Sally argues that the Chancellor erred by not considering the eight *Ferguson* factors to be considered by Chancellors when making equitable distributions of marital property. *Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994). The property sought by Sally was a baby grand piano which she testified was given to her as a gift by John. The *Ferguson* factors are:

1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:

a. Direct or indirect economic contribution to the acquisition of the property;

b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and

c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.

2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.

3. The market value and the emotional value of the assets subject to such distribution.

4. The value of the assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;

5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;

6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;

7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,

8. Any other factor which in equity should be considered.

*Ferguson*, 639 So. 2d at 928. Chancellors are to evaluate the division of marital assets by the above guidelines, and should support their decisions with findings of fact and conclusions of law for purposes of appellate review. *Id.* This Court has held that the failure of a Chancellor to make these considerations when refusing to order an equitable distribution constituted reversible error. *Carrow v. Carrow*, 642 So. 2d 901, 904-07 (Miss. 1994).

¶26. In the instant case, the Chancellor clearly considered factor number 2, finding that the parties

had already made an equitable division of jointly owned property. The question to be determined by this Court, therefore, is whether the Chancellor's consideration and finding as to this factor alone suffices to satisfy the requirements of *Ferguson*. We note that the Chancellor need not make findings as to each and every factor set forth in *Ferguson*, but rather the Chancellor may consider only those factors he finds "applicable" to the property in question. *Carrow*, 642 So. 2d at 907. Here, the finding that the parties had previously divided the marital property was clearly applicable, and the Chancellor found this factor sufficient to dispose of the issue of further equitable distribution. Accordingly, the Chancellor did not manifestly err in refusing to equitably divide the marital assets.

## CONCLUSION

¶27. The Chancellor did not err in refusing to reinstate Sally's alimony after it had been forfeited by her; the cohabitation clause in the divorce settlement and decree was not contrary to law nor void as a matter of public policy; and the Chancellor did not err in ordering Sally to convey to John her one-half interest in the marital home. Further, the Chancellor did not err in modifying the terms of the property settlement by adopting Sally's lay appraisal of the fair market value of the marital residence or in crediting John's voluntary payments towards the amount he owed Sally for her interest in the home. The chancellor's refusal to order an equitable distribution of marital property was sound and well within his equitable powers. We therefore affirm the chancery court judgment below.

¶28. **AFFIRMED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, ROBERTS AND SMITH, JJ., CONCUR. BANKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION. McRAE, J., CONCURS IN RESULT ONLY.**


   **BANKS, JUSTICE, DISSENTING:**



¶29. Because I do not agree with the majority conclusion that periodic alimony ordered and subsequently terminated cannot be revived or reinstated, I dissent.

¶30. This is a matter of first impression. The majority correctly notes that we have not been cited a case in which alimony was reinstated after it was terminated. We have been cited cases, however, in which this Court has recognized the possibility of reinstatement under certain circumstances, even where the termination is based upon remarriage. *Bridges v. Bridges*, 217 So. 2d 281 (Miss. 1968); *Boren v. Windham*, 425 So. 2d 1353 (Miss. 1983). In my view, if revival can exist where a person has unequivocally entered into a subsequent marital relationship from which flows a legal duty of support from another, certainly revival may occur where termination is based upon a temporary non-binding relationship where actual change of financial circumstances has been shown. *See Hammonds v. Hammonds*, 641 So. 2d 1211 (Miss. 1994); *see also Palmer v. Palmer*, 289 S.C. 216, 345 S.E. 2d 746 (S.C. App. 1986).

1. Prior to her filing the Counterclaim, Sally Weathersby on August 6, 1993, filed a Motion to Set Aside the Judgment of Divorce and Consent Order of Modification. On November 19, 1993, the court ordered this motion dismissed under Miss. Rules of Civ. Proc. 12(b)(6), finding that Sally had failed to meet the six-month time limitation of Rule 60(b)(1). On appeal, this order was per curiam affirmed by this Court on November 8, 1995, in *Weathersby v. Weathersby*, 667 So. 2d 30 (Miss. 1995).