641 So.2d 1211 (1994)
Larry D. HAMMONDS
v.
Linda Gregory HAMMONDS.
No. 92-CA-01313.
Supreme Court of Mississippi.
August 18, 1994.
Gary L. Roberts, Pascagoula, for appellant.
*1212 William T. Reed, Oswald & Reed, Pascagoula, for appellee.
Before PRATHER, P.J., and SULLIVAN and JAMES L. ROBERTS, JJ.
JAMES L. ROBERTS, Justice, for the Court.

I.

INTRODUCTION
Larry Hammonds was granted a divorce from Linda Hammonds on grounds of adultery. The chancellor awarded Linda no alimony, finding that she had forfeited any right to it by her "repeated adulterous behavior." We reversed, stating that except for her fault, Linda satisfied the criteria for an alimony award. We directed that on remand, Linda be awarded lump sum or periodic alimony, or both, such that she would not remain "in a state of financial misfortune." Hammonds v. Hammonds, 597 So.2d 653 (Miss. 1992).
At a hearing held on remand, Larry presented evidence that since the divorce, Linda had been cohabiting with another man, and, having received $44,000 from sale of the marital home, was no longer in financial need. The chancellor found that Linda had no current income, and had spent much of the $44,000 on medical and other expenses incurred since the divorce. The chancellor stated that on the basis of these facts, and the requirements of this Court's mandate, Linda was entitled to $500 per month alimony. Larry appealed, citing the following error:

FOLLOWING A DIVORCE, IS A FORMER WIFE ENTITLED TO PERIODIC ALIMONY, EVEN THOUGH SHE IS REGULARLY COHABITING WITH ANOTHER MAN AND IS NOT DESTITUTE?
We reverse and remand for further findings on Linda's financial circumstances.

II.

FACTS AND PROCEDURAL HISTORY
In July of 1990, after twenty-five years of marriage,[1] Larry Hammonds was granted a divorce from Linda Hammonds on grounds of adultery. The chancellor awarded no alimony, finding that Linda had given up any right to it by her "repeated adulterous behavior." In April of 1992, we reversed, noting that
(e)xcept for her fault, Linda satisfies the other criteria for an alimony award: she contributed substantially to the total accumulation of marital assets; the marriage lasted some twenty-five (25) years; she has no separate income or estate while Larry's is substantial; and without alimony, Linda lacks any financial security.
Hammonds v. Hammonds, 597 So.2d 653, 655 (Miss. 1992). The Court remanded with directions "to award the former wife either lump sum or periodic alimony, or a combination of both, in its discretion, in an amount which will not leave her in a state of financial misfortune." Id. The Court's mandate was issued May 19, 1992.
Testimony from a hearing held September 15, 1992, is summarized below.

Linda Hammonds
Linda testified that at the time of the divorce, in July of 1990, she had been living in the Colonial Manor Apartments in Pascagoula, where she lived until July of 1991. Thereafter, she had been living with her mother in Ovett, Mississippi, where she did not pay any rent.[2]
Linda testified that she had sinus problems, requiring surgery in October of 1991. Additionally, Linda suffered from Meniere's disease, causing deafness in one ear. She had undergone surgery for this condition in January of 1992; a second hospitalization had occurred in March of 1992. Linda stated that she still experienced vertigo, and was scheduled for appointments in Jackson for further tests. She testified that she had paid *1213 cash for her treatments in the beginning, lacking insurance, but that Vocational Rehabilitation was now paying for medical bills. Linda stated that she did not currently have health insurance.
Linda testified that she was not currently employed; the last time she had been employed was as a dental assistant between May and August of 1991.[3] Linda stated that she had quit this minimum wage job, due to illness. She testified that between the divorce in June of 1990 and finding this job, she had sought other employment, but that due to her record of leaving jobs, employers were reluctant to hire her. She explained that Larry had made her quit every job she had ever had. Additionally, Linda explained, she had quit school after the eighth grade to marry Larry, and was unskilled; the only jobs she found were minimum wage. Linda testified that she had not applied for work since her last employment, and that currently she could not work. She stated that she was under the medical care of Vocational Rehabilitation, who were planning retesting of her ear, and that she would lose this care if she found employment. Linda stated that aside from her ear problem, there was "not really" anything that interfered with her ability to work.
Linda testified that with the $44,000 she had received from the house sale, she had bought a used 1991 Dodge for $14,000, replacing her old car, which had 150,000 miles on it. In addition, she had repaid loans from her mother and brother totalling about $5000, and a loan from friend Shane Cole of about $2000. She also bought a wedding dress for her daughter, and clothes for her other children, totalling around $2000. She paid off attorneys fees and some medical bills not covered by vocational rehabilitation. She stated that she continued to spend $60.00 per month on medication. Linda testified that she had remaining about $13-14,000, in a checking account at a bank in Hammond, Louisiana.
Linda testified that her current financial obligations included medical bills and bills from Penney's (about $700) and Lerner's (about $250). She stated that some of the purchases at these stores were clothing for her children, and that she paid off these bills by cash or check monthly.
Linda denied Larry's allegation that she was cohabiting with Shane Cole at the Yazoo Bayou Apartments in Pascagoula. She testified that she had another friend, Denise Tallman, who lived "behind there" with whom she would stay overnight sometimes. Linda stated that she had not resided a single night with Shane Cole. She stated that prior to living at the Yazoo Bayou apartments, Cole had lived with his mother; she had not spent the night with him there either. Linda testified that Cole had not assisted her financially since the divorce. She stated that she did see Cole "socially," but she would pay her own way for movies or meals.
Linda testified that while she had spent the majority of her time with her mother in Ovett, she had also spent time in Hammond and Independence, Louisiana, where she had family, as well as Pascagoula, which she visited once or twice a month, for a couple days at a time. Linda testified that she wished to return to Pascagoula because she missed her three children.

Larry D. Hammonds
Larry testified that he was a refinery mechanic at Chevron, earning $18.98 per hour, with a gross income of about $3000 per month. Larry stated that he had remarried in September of 1990, and that he, his new wife, and her son lived in a rented house in D'Iberville. Larry testified that of the children from his marriage to Linda, Tim was twenty four years old, a student at Southern Mississippi University; Scott was twenty, and Sheila was eighteen. Sheila had just moved out into her new trailer; she was about to be married.[4] Larry testified that his wife Kathy worked at Singing River Hospital. He stated that he had not adopted *1214 Kathy's son Zack, and that Zack's father paid child support of $60 per week.
Larry testified that he had a retirement account at Chevron, and that he had borrowed $25,000 to pay off bills Linda had left; he paid an amount monthly on a consolidated loan. His financial statement, admitted into the record as Exhibit 2, showed the monthly amount to be $470.52. Other expenses listed were rent of $360.00; food and household supplies, $600.00; utilities, phone, and cable $240.00; medical insurance and expenses, $300.00; auto insurance and expenses, $450; and payments for a washing machine ($58.00), laundry and cleaning ($50) and retirement ($60). The financial statement showed a net monthly income of $2350.62. Larry testified that his wife's income (amount unknown) was used to fill the gap between this monthly income and their monthly expenses ($2748.52).
Larry stated that since the divorce, he had purchased a 1984 Porsche for $7800. In addition, he had borrowed money at the credit union to buy Sheila a car and a trailer, and buy Scott a truck. He stated that he paid monthly notes on these vehicles (the financial statement indicates $110 per month), and that he had title to them. He testified that the obligation for the trailer was shared by him and Sheila, and would be until she was married.
Larry testified that he had bought three acres of land for about $7900, and had started building a house with his share of the proceeds from the sale of the marital home. He stated that about $15,000 remained of his share of the proceeds. He stated that he would need to borrow more money to finish the house. Larry stated that he continued to provide support for Timmy (24) and Scott (20), paying for most college tuition and expenses; both sons made some contributions by working. Larry also stated that he had given Sheila his living room furniture. Larry testified that he had provided no support to Linda since the divorce.
Larry and Linda's son Timmy testified that since the divorce in 1990, his mother had cohabited with Shane Cole at several locations, including the Colonial Manor Apartments and the Yazoo Bayou Apartments, where they currently occupied a one-bedroom apartment.
Two of Linda's neighbors, who happened to be Larry's friends, testified that they had observed Linda and Shane coming and going at various times.
On September 18, 1992, Larry filed a Motion to Deny Award of Alimony. The motion contended that Linda was not entitled to alimony, "inasmuch as she is not destitute ... has now acquired substantial assets, and she has engaged in a continuing course of misconduct" justifying a total denial of alimony. The motion also stated that Linda was not entitled to alimony based on evidence presented at the hearing.
On September 22, 1992, Linda filed a Motion to Enforce Mandate and Motion to Strike. The motion noted that Larry had filed no pleadings before the hearing, and requested that the trial court strike the testimony of the hearing witnesses. The motion also requested that the court strike Larry's motion to deny alimony, and that it issue an opinion consistent with the Supreme Court mandate.
The trial court's ruling, issued November 3, 1992, awarded Linda $500 per month alimony. The court noted Linda's testimony concerning her physical condition, lack of education or training, and found that she had spent a large part of the $44,000 house proceeds on bills incurred since the divorce. The court also noted that Linda had "continued the conduct which the Court used to deny alimony in the first instance." The chancellor stated that under the doctrine of the law of the case, he was bound by the Supreme Court's mandate. His final Order, dated December 7, 1992, was entered Nunc Pro Tunc effective November 12, 1992.
Larry filed his appeal on December 10, 1992.

III.

DISCUSSION OF ISSUE

FOLLOWING A DIVORCE, IS A FORMER WIFE ENTITLED TO PERIODIC ALIMONY, EVEN THOUGH SHE IS REGULARLY COHABITING WITH ANOTHER *1215 MAN AND IS NOT DESTITUTE?
Larry argues that the trial court erred in awarding Linda alimony on remand, because 1) she had forfeited the right to alimony by living with another man since the divorce, and 2) her poverty had been eliminated by the receipt of $44,000 from the sale of the house, thus removing the basis for the alimony award. Larry contends that Linda's co-habitation, or fornication, with Shane Cole, constitutes a material change in circumstances entitling him to modification of the award, and further, that her cohabitation did not arise from poverty, due to the $44,000 share of the house sale proceeds.
Linda argues that the chancellor properly complied with the mandate of this Court, and that his decision should be affirmed. She contends that the award, based on the length of marriage, her financial resources, physical condition and training is supported by the evidence.
This Court has several times addressed the question of whether a wife's post-divorce sexual relations or cohabitation may justify termination of alimony payments from her ex-husband. In McRae v. McRae, 381 So.2d 1052 (Miss. 1980), this Court affirmed the judgment of the chancellor in terminating alimony payments of the husband, where the wife, after the divorce, had cohabited with another man for over a year. The man paid rent part of the time, while she paid all other living expenses. Finding this arrangement "misconduct," the Court stated:
We are of the ... view that her abode with the man for more than a year, openly living in adultery, enduring the embarrassment of it, and, in addition by silence, setting that kind of example before her daughters constituted a material change in the circumstances of the parties and that, by her unconscionable conduct, she forfeited her right to future alimony by her repudiation of the right thereto.
The (trial) court said, in part, in its opinion:
It is the Court's opinion that by the admitted cohabitation over this period of time with a person to whom she was not married that the respondent forfeited her right to future alimony the same as if she had been married to him. To hold otherwise would be to condone the living and cohabiting with a person rather than marrying and, in effect would penalize a person for marrying but reward them for cohabitation without benefit of marriage.
We think that, on the present record, the court was manifestly right in its decision.
McRae v. McRae, 381 So.2d at 1055-1056. Citing Rubisoff v. Rubisoff, 242 Miss. 225, 133 So.2d 534 (1961), the Court noted that where a wife's misconduct after a divorce is the result of "want and penury" brought about by the ex-husband's refusal to pay alimony, the husband would not be relieved of his alimony obligation. In this case, however, the Court found that the wife's cohabitation was not forced by want or penury; therefore, the husband was entitled to terminate alimony payments.
In McHann v. McHann, 383 So.2d 823 (Miss. 1980), this Court affirmed the termination of a husband's alimony payments, where the wife had engaged in sexual relations with four men after the divorce. In Owen v. Gerity, 422 So.2d 284 (Miss. 1982),[5] this Court reversed the chancellor's termination of alimony, holding that while there was evidence that the ex-wife was dating another man, the evidence was insufficient to establish a material change of circumstances due to her alleged sexual misconduct. The Court distinguished McHann and McRae on the grounds that in those cases, the divorced wives admitted to sexual relationships and cohabitation, while in Owen, the wife and her alleged partner denied a sexual relationship or even sleeping in the same house. Owen v. Gerity, 422 So.2d at 288.
The question posed by the case at bar is the effect of a recipient ex-spouse's cohabitation on the payor spouse's alimony obligation. We apply the test for modification of spousal support  whether there has been a material or substantial change in circumstances since *1216 the divorce. See, e.g., Tingle v. Tingle, 573 So.2d 1389, 1391 (Miss. 1990); Morris v. Morris, 541 So.2d 1040, 1043 (Miss. 1989).
The McRae, McHann and Owen cases above clearly reflect a moral judgment that a divorced woman should not engage in sexual relations; the penalty for such activity is forfeiture of her right to support from her ex-husband. A secondary rationale in these cases for termination of alimony is the presumption that the divorced woman's partner/cohabitant is providing financial support, thereby eliminating or reducing her need for support from her ex-husband. We find that only the latter issue  that of support  is properly before the court in its consideration of a request for alimony reduction or termination.
Such an approach is, in fact, the modern trend. In DePoorter v. DePoorter, 509 So.2d 1141 (Fla.App. 1 Dist. 1987), where an ex-wife cohabited with another man after dissolution of a 28 year marriage, the court held that cohabitation raised a presumption of changed circumstances or financial abilities of the parties, but did not itself support a reduction of alimony. See also Amii v. Amii, 5 Haw. App. 385, 695 P.2d 1194 (1985) (alleged or perceived immorality of former wife's cohabitation not relevant to husband's duty to pay spousal support; no evidence in the record as to what effect, if any, cohabitation had on wife's continuing need for spousal support); Bisig v. Bisig, 124 N.H. 372, 469 A.2d 1348 (1983) (former wife's cohabitation in and of itself not grounds for modification or suspension of alimony, but would be considered substantial change in circumstance if it significantly changed financial condition or needs of recipient); Horr v. Horr, 445 N.W.2d 26 (S.D. 1989) (cohabitation itself not circumstance upon which alimony may be modified or terminated; it may be considered sufficient change in circumstances to warrant modification only when it affects financial need of alimony recipient); Overson v. Overson, 125 Wis.2d 13, 370 N.W.2d 796 (App. 1985) (cohabitation alone, without effect on recipient spouse's financial circumstances insufficient reason to terminate maintenance payments); Myers v. Myers, 560 N.E.2d 39 (Ind. 1990) (court did not abuse discretion in refusing to modify maintenance; mere fact of cohabitation not enough to establish substantial change in circumstances, and husband failed to establish amount of additional support boyfriend was providing); Aaker v. Aaker, 447 N.W.2d 607 (Minn.App. 1989) (husband seeking termination of support payments to former wife who was cohabiting with another man would have to demonstrate to court substantially decreased need of the wife); accord Wight v. Wight, 168 W. Va. 334, 284 S.E.2d 625 (1981); Bentzoni v. Bentzoni, 442 So.2d 235 (Fla.App. 5 Dist. 1983); Richardson v. Richardson, 598 S.W.2d 791 (Tenn. App. 1980); Palmer v. Palmer, 289 S.C. 216, 345 S.E.2d 746 (App. 1986).
In Hurley v. Hurley, 230 N.J. Super. 493, 553 A.2d 891 (1988), a New Jersey court held that an alimony award could be modified due to changed circumstances, where the recipient ex-wife was cohabiting with another man. The court stated that "changed circumstances" could be demonstrated where there was 1) a showing of support or subsidization of the ex-wife by the cohabitant; 2) any change in wife's economic needs, or 3) new resources resulting from wife's relationship with the cohabitant and his daughter, with whom she lived.
In DePoorter v. DePoorter, 509 So.2d 1141 (Fla.App. 1 Dist. 1987), a Florida court used a two-prong test in considering whether cohabitation by the alimony recipient supported modification of the payor's obligation. The court considered 1) whether the third party provides support to the recipient spouse, and 2) whether the recipient spouse contributes to support of the third party. The court added that certain other factors should still be considered in determining whether modification was justified, such as length of the marriage, respective contributions to the marriage, property received at divorce, the parties' respective earning capacities, as well as the earning capacities of the new spouses or cohabitants.
These cases offer reasonable and flexible approaches to the question of alimony modification in the event of cohabitation by the recipient ex-spouse. We suggest that the chancellor consider their examples.
*1217 We note that a number of states, including Alabama and Georgia, have so-called "live-in lover" statutes, authorizing courts to terminate or modify alimony where the party receiving it is living openly or cohabiting with a member of the opposite sex. See, e.g., Shapiro v. Shapiro, 259 Ga. 405, 383 S.E.2d 134 (1989); Ex parte O'Neil, 420 So.2d 264 (Ala. 1982). Mississippi has no such statute, although, of course, cohabitation itself is illegal. Miss. Code Ann. (1972) § 97-29-1 (Supp. 1992). Louisiana's statute requires termination of alimony where the recipient enters into "open concubinage," which arises when a man and woman live together in permanent relationship as husband and wife without benefit of matrimony. See Cook v. Cook, 436 So.2d 743 (La. App. 1983). Tennessee has a statute which creates a rebuttable presumption that a cohabitant contributes to a divorcee's financial support. See Azbill v. Azbill, 661 S.W.2d 682 (Tenn. App. 1983). The legislature may wish to consider such examples.

IV.

CONCLUSION
On remand from this Court, the chancellor apparently believed that he had no choice but to award Linda alimony, perhaps even substantial alimony, in order to comply with our mandate. Such belief was a misapprehension of our ruling. On remand this time we stress that the chancellor is to examine Linda's financial circumstances, in order to determine if modification of the alimony award is merited.
We remand this case for further findings on whether Linda has or is in fact cohabiting with Shane Cole, whether she is being supported by (or is supporting) him, and whether her financial needs have changed as a result. The chancellor may modify and/or terminate the alimony award on the basis of such findings. We reiterate that in determining the effect of post-divorce cohabitation on a recipient spouse's alimony entitlement, financial, rather than moral aspects of the cohabitation are to be considered.[6]
REVERSED AND REMANDED FOR REHEARING CONSISTENT WITH THIS OPINION.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS, and SMITH, JJ., concur.
McRAE, J., concurs with separate written opinion joined by SULLIVAN, J.
McRAE, Justice, concurring:
I agree with the majority's decision to remand again for reexamination of Linda's financial circumstances.
In Hammonds v. Hammonds, 597 So.2d 653 (Miss. 1992), we remanded this case to the Jackson County Chancery Court for determination of minimal alimony so that Linda Hammonds, though an adulterous wife, might not be left destitute. Since that time, her circumstances have improved. At the hearing on remand, evidence was introduced showing that she had received $44,000.00 from the sale of the marital dwelling and further, that she was cohabitating with her current paramour. In light of this, Larry Hammonds now appeals the $500.00 award of monthly alimony ordered by the chancellor.
Had the sale proceeds from the marital home been available to Linda Hammonds at the time of the divorce, her repeated adultery might have precluded her from receiving even minimal alimony. Smith v. Smith, 614 So.2d 394, 397 (Miss. 1993). However, as we stated in our original opinion, "adultery should not stand as an absolute bar to alimony, especially, we believe, when denial of alimony would render the wife destitute." Hammonds, 597 So.2d at 655. See also Pratt v. Pratt, 623 So.2d 258, 262-263 (Miss. 1993); Smith, 614 So.2d at 397. Thus we remanded the case so that the chancellor might make some provision for her.
Had Linda Hammonds remarried, Larry Hammonds' obligation to support her with periodic alimony would have terminated. *1218 Box v. Box, 622 So.2d 284, 290 (Miss. 1993); East v. East, 493 So.2d 927, 931 (Miss. 1986).
SULLIVAN, J., joins this opinion.
NOTES
[1] Larry was eighteen and Linda fourteen when they married. Hammonds v. Hammonds, 597 So.2d 653, 654 (Miss. 1992).
[2] Linda testified that she had tried living in an apartment, paying $275 or $310 per month plus utilities, but had found she couldn't afford it.
[3] A document from Linda's employer was admitted into evidence as Exhibit 1; it stated that her wages for the months of May through August of 1991 had been $1,714.46.
[4] It was unclear if Scott lived with his father or not. (Vol. 2 at 90-91).
[5] In a departure from earlier cases, the Court noted in Owen v. Gerity that the ex-wife's sexual relations with unmarried men constituted not adultery, but fornication.
[6] Of course, this and other principles discussed above apply to all alimony recipients, regardless of sex.