# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 95-CA-00092-SCT

*HERBERT FRANK SCHARWATH*

*v.*

*DIANNA K. SCHARWATH*

### ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 12/28/94 |
| TRIAL JUDGE: | HON. HARRIS SULLIVAN |
| COURT FROM WHICH APPEALED: | SIMPSON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | BRUCE B. SMITH |
| ATTORNEY FOR APPELLEE: | EDWARD P. LOBRANO, JR. |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REVERSED AND REMANDED - 12/08/97 |
| MOTION FOR REHEARING FILED: | 05/01/97 |
| MANDATE ISSUED: | 12/15/97 |

EN BANC.

McRAE, JUSTICE, FOR THE COURT:

¶1. The Motion for Rehearing is denied. The original opinions are withdrawn and these opinions are substituted therefor.

¶2. From a decree of the Chancery Court of Simpson County denying a petition by Herbert Frank Scharwath (Frank) to terminate his periodic alimony payments to Dianna Scharwath, Frank appeals. He contends that his proof was sufficient as a matter of law to justify the chancellor's termination of alimony payments; that the chancellor was manifestly wrong and clearly erroneous in his finding that no support was being given to, or received by, Dianna from Jim Burns; and that the chancellor's failure to terminate alimony upon a finding of cohabitation is a violation of the public policy of Mississippi. Because we agree that cohabitation creates a presumption of mutual support between Dianna and Burns, we reverse and remand the decision which denied Frank's request to terminate alimony payments.

## I.

¶3. Frank and Dianna Scharwath were married on August 9, 1963. Dianna was granted a divorce

from Frank on November 19, 1992. The final decree of divorce incorporated a settlement which, *inter alia*, called for Frank to pay Dianna $1800 per month in alimony.

¶4. On September 13, 1993, Frank filed a petition to modify the judgment of divorce to terminate the periodic alimony payments. Frank initially claimed inability to pay as the reason for modification, but eventually he only pursued the cohabitation of appellee with another man as grounds for termination. On March 24, 1994, the chancellor found that the provision of the settlement agreement that required Frank to pay $1800 a month to Dianna was subject to modification. On December 28, 1994, however, the chancellor ultimately denied Frank's petition to modify the judgment. It is from this order that Frank urges this appeal.

## II.

¶5. In his petition to modify, Frank asserted that because Dianna was cohabiting with one Jim Burns, her alimony privileges should cease. The chancery court, in its final decree, found that Dianna was having a sexual relationship and cohabiting with Burns. However, the court also found that there was no substantial support by Dianna for Burns and no substantial support by Burns for Dianna. This Court will not "disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." *Crow v. Crow*, 622 So.2d 1226, 1228 (Miss. 1993); *Bell v. Parker*, 563 So.2d 594, 596-97 (Miss. 1990).

¶6. Modification of alimony may occur upon the existence of a situation of mutual support between the recipient spouse and another individual which alters the recipient spouse's financial needs. *Ellis v. Ellis*, 651 So.2d 1068, 1072 (Miss. 1995); *Hammonds v. Hammonds*, 641 So.2d 1211, 1217 (Miss. 1994). The facts established at trial showed that Dianna provided Burns with a pick-up truck and a rent-free home in which to live and from which he could operate his successful carpentry business. Burns' carpentry business provided a definite source of income, with frequent jobs in Jackson, Mississippi and Fairhope, Alabama. With this successful business providing income, Burns continued to return to Dianna's home where he lived as if married to Dianna, as established by neighbors and Dianna's own son, who often stayed with his mother at the same time she and Burns slept in the master bedroom. Burns provided continuous support around the house and engaged in large projects such as building a deck, retiling the basement, and various other carpentry and maintenance tasks. He even moved furniture into the home and maintained duties such as cutting the grass, washing the car, carrying out the garbage and purchasing insurance on the truck. *See Tedford v. Dempsey*, 437 So.2d 410 (Miss. 1983) (stating that "in kind" services must be assigned monetary value as well). Based on these undisputed facts, direct evidence established that Dianna provided Burns with support in the form of transportation and a home to live in. Further, it was, by reasonable inference, clear that Burns likewise provided income and support to Dianna in return. Consequently, the chancellor erred in failing to consider the mutual support as between Dianna and Burns.

¶7. The chancellor's failure to find a material change in circumstances stemmed from the lack of direct financial evidence presented by Frank at trial. This rationale, along with the facts of this case, accurately reflects the difficulty a providing spouse faces in presenting direct evidence of mutual financial support between cohabiting parties. The parties who live in cohabitation can easily and purposely keep their condition of mutual financial support concealed from the paying spouse, as well as from courts seeking only financial documentation before it will grant a modification. Such is the

reason that we will, in future cases, apply the rule that proof of cohabitation creates a presumption that a material change in circumstances has occurred. *See DePoorter v. DePoorter*, 509 So.2d 1141, 1144 (Fla. Dist. Ct. App. 1 1987) (stating that presumption of material change in circumstances exists where recipient party cohabits with another). This presumption will shift the burden to the recipient spouse to come forward with evidence suggesting that there is no mutual support within his or her de facto marriage. While this presumption does not alter the overall burden of proof or the standard used to determine whether a modification is warranted, it does create a middle ground for this Court, between making moral judgment on the parties and condoning cohabitation outright. *See McHann v. McHann*, 383 So.2d 823, 826 (Miss. 1980) (finding that admitted cohabitation forfeited right to future alimony since holding otherwise would reward cohabitation without benefit of marriage); *McRae v. McRae*, 381 So.2d 1052, 1055-56 (Miss. 1980) (finding that misconduct of recipient spouse may be sufficient to warrant the termination of alimony).

## III.

¶8. In conclusion, we find that a review by the chancellor in light of the presumption as set out above is necessary. The facts of this case clearly present a question of whether the presumption of mutual support is overcome in the chancellors' determination of whether the alimony should be terminated, and for this reason, the chancellor's decision is hereby reversed and remanded.

¶9. **REVERSED AND REMANDED.**

**LEE, C.J., PITTMAN, BANKS, ROBERTS AND MILLS, JJ., CONCUR. BANKS, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY PRATHER AND SULLIVAN, P.JJ., AND SMITH, J.**

**BANKS, JUSTICE, CONCURRING:**

¶10. While I have no serious quarrel with creating the presumption as it is described by the majority, I disagree with the assumption underlying the majority's concern which seems to equate cohabitation with marriage. The plain fact is that the lack of any mutual obligation between the parties drastically differentiates cohabitants from marital partners. That difference should not lightly be passed over in the rush to judgment concerning the appropriate level of support owed by the ex-spouse. The fact that a spouse entitled to support may choose to expend some of his or her available resources for the benefit of another should not *ipso facto* relieve the supporting spouse of the duty of support. It is the legal entitlement arising out of a subsequent marriage which justifies the termination of support rather than the fact that such support is or is not rendered.

## I.

¶11. The settlement agreement here involved contained the following clause:

> That the Husband, HERBERT FRANK SCHARWATH, shall pay to Wife the sum of $1,800 per month for alimony for Wife commencing on the 1st day of December 1992 and continuing on the 1st day of each month until Wife remarries.

There is no viable issue regarding Frank's ability to pay. Nor has an issue been made regarding Dianna's continuing need for support arising out of any change in circumstances other than the alleged cohabitation. The task of the trial court, then, was to examine that relationship and determine whether it should have an adverse impact upon Frank's previously acknowledged duty of support.

¶12. Dianna received the family home, which was fully paid for, in the settlement agreement. Dianna testified that she was acquainted with Burns. She testified that Burns lived in a couple of different places while he was working, including Jackson and Fairhope, Alabama. Dianna denied that Burns was living with her, but testified that Burns had spent evenings at her home. Dianna testified that Burns is a carpenter and had done work for her including building a deck, retiling the basement, painting, nailing up boards, and replacing the post on the patio. Dianna testified that she originally paid Burns $100 a day for his work in October of 1993, but that she had not paid Burns anything since that month. Dianna stated that since October of 1993, Burns had spent the night "occasionally." She stated that at times Burns would stay for "a week at a time." Dianna stated that Burns kept some work clothes, tools, and equipment at the house, but denied that he had a "closet full of clothes" there. She stated that Burns had given her two couches that are now at her house. She stated that Burns received a minimal amount of mail at her house. Dianna testified that when Burns was putting the deck onto the house, he had his phone calls transferred to her house. In describing their relationship, Dianna stated that Burns was a "good friend." She stated that she is not dating anyone else besides Burns. She stated that she bought a pick-up truck so that Burns could use it in his work. She stated that this pick-up truck was Burns' sole means of transportation.

¶13. On direct examination, Dianna stated that she was not supporting Burns. She stated that she had not received an alimony payment since August of 1993. She stated that she was depending on the alimony to live on without invading her savings and retirement. She stated that she has in no way contributed to the support of Burns. She stated that she allowed Burns to use the truck because she was unable to pay him. She denied having sexual intercourse with Burns. She stated that although Burns has spent the night at her house, they have never shared the same bed. She also stated that she would never sleep in the same bed with another man while her children were in the house. She stated that when Burns stays over, he sleeps in the master bedroom and she sleeps in her daughter's room.

¶14. Dianna admitted that the alimony payments stopped after Frank had a stroke and became totally disabled. She also stated that when this petition was filed all payments then due had been made. She stated that no contempt charges have been filed against Frank for nonpayment. She stated that she had to cash in an IRA because the alimony had stopped.

¶15. Calvin Kirksey, Jr., Dianna's next door neighbor, testified that Burns was living with Dianna. Kirksey stated that he observed Burns "living there, cutting the grass, washing cars, carrying out garbage" and that he had observed him there "in the morning, late at night, during the week, weekends." He stated that from the summer of 1993 until September or October of 1994, he had seen Burns at Dianna's regularly. He also stated that Burns was a resident and not a visitor. Kirksey stated that he had no personal knowledge as to whether Dianna and Burns had a sexual relationship.

¶16. John Herbert Scharwath, the parties' thirty-year-old son, testified that he came to stay with his mother every other weekend or so. He stated that Burns was living with his mother on occasions. John testified that Burns had clothes all around the house. John testified that Burns and his mother would sleep together in the master bedroom.

¶17. The court denied the motion to modify the periodic alimony. The court found that Dianna was cohabiting with Burns, but that there was no substantial support by Dianna of Burns nor any substantial support by Burns of Dianna. From this ruling Frank appeals.

## II.

¶18. The standard of review in determining the weight of the evidence has been well established by this Court and it will not "'disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied.'" *Crow v. Crow*, 622 So. 2d 1226, 1228 (Miss. 1993) (quoting *Bell v. Parker*, 563 So. 2d 594, 596-97 (Miss. 1990)).

¶19. Frank claims that there was sufficient proof that Burns supported Dianna by giving her furniture, performing repair and maintenance work on her house, cutting the grass, washing the car, and buying the insurance for the pick-up truck. While all of this might be considered as some type of support, the chancellor did not find a sufficient amount of support to warrant termination of the periodic alimony. The only evidence of Dianna's financial condition was that she had not received alimony for some period of time and, because of that, she had to cash in an IRA. She also testified that she would have to depend upon her savings or retirement if the alimony was terminated. Frank presented no evidence to the contrary. Frank argues that support does not have to be only monetary support. Frank cites *Tedford v. Dempsey*, 437 So. 2d 410 (Miss. 1983), where this Court stated:

> By "support" we include both monetary and "in kind" services. The custodial parent who in fact provides transportation service, washes the children's clothes, helps with homework and the like is entitled to have these "in kind" contributions assigned a reasonable monetary value . . . .

*Id.* at 422 n.11. Frank cites *Gillespie v. Gillespie*, 594 So. 2d 620 (Miss. 1992), in which this Court stated that the free use of the home, furnishings, and automobile are considered in awarding child support. This does not help Frank's case, because the issue remains whether there is a material or substantial change as a result of the support. *See Hammonds v. Hammonds,* 641 So. 2d 1211, 1217 (Miss. 1994). Here the record shows that Dianna has received some carpentry services from Burns and that she in turn has provided Burns with certain economic support. None of this, however, dictates a conclusion that there has been a material change in Dianna's financial circumstances. Surely, Frank would have no claim if Dianna secured the carpentry services on the open market for an amount roughly equivalent to the economic benefit which has been derived by Burns. The chancellor's finding is supported by sufficient evidence.

¶20. The majority, however, now adopts a presumption that there has been a material change. While that presumption may have dictated a different result in the eyes of the chancellor who saw the witnesses and heard their testimony, that is not necessarily the case. An evidentiary presumption disappears when credible and substantial evidence is produced by the opposing party. Miss. R. Evid. 301 cmt.; *Neely v. State ex rel. Tate County*, 628 So. 2d 1376, 1381-82 (Miss. 1993). Dianna testified that she derived no substantial support from Burns. She testified that she had to invade her

savings when support payments stopped. There is no reason to believe otherwise. That is evidence that the court apparently found credible. The majority believes that a presumption might produce a different result. I disagree but I reluctantly acquiesce in the decision to remand this case to the chancellor for rehearing.

**PRATHER AND SULLIVAN, P.JJ., AND SMITH, J., JOIN THIS OPINION.**