Effie ANDERSON, Plaintiff and Respondent,

v.

Arnold ANDERSON, Defendant and Appellant.

No. 7454.

Supreme Court of North Dakota.

March 3, 1955.

**850**

Robert Wallin, Hettinger, for plaintiff and respondent.

Mackoff, Kellogg, Muggli & Kirby, Dickinson, for defendant and appellant.

MORRIS, Judge.

This is an action for divorce instituted on October 5, 1953, by the plaintiff against the defendant upon the grounds of wilful neglect and extreme cruelty. The plaintiff also sought custody of a three year old daughter born to the marriage.

The defendant answered denying the allegations of the complaint and counterclaimed for a divorce in his behalf upon the ground that the plaintiff had committed adultery with two men named in the complaint and asked that custody of the daughter be awarded to him.

The trial court made findings of fact setting forth in some detail plaintiff's conduct with respect to one of these men from which he drew the conclusion of law that the plaintiff had been guilty of the commission of adultery. He awarded custody of the child to the defendant and decreed that the defendant be divorced from the plaintiff. The plaintiff does not question these findings. The trial court also decreed that the defendant pay the plaintiff the sum of $2,000 "as and for her services and property settlement in full."

The defendant appealed from the judgment entered pursuant to the court's conclusions of law and demanded a trial de novo. He challenges the award of $2,000 to the plaintiff. This award constitutes the only question in issue on this appeal.

The findings of fact are entirely devoid of any reference to the award or facts upon which it was based but since a trial de novo has been demanded we will consider the facts disclosed by the record to the extent necessary to determine whether the award was warranted.

The parties were married June 20, 1949. The defendant was then a bachelor owning and operating a farm of 240 acres, all but 35 acres being under cultivation. The plaintiff had previously been married and divorced. She brought to the home three children by her former marriage, a teen aged daughter and two boys aged about eight and six years respectively. The children were not adopted by the defendant but joined the family circle. The daughter went to Billings, Montana, in the spring of 1951. The boys remained on the farm

until some weeks after the plaintiff left and went to Billings on February 14, 1953. Testimony concerning the circumstances surrounding her departure is conflicting. The plaintiff claims the defendant forced her to leave. The defendant testified that she left voluntarily to go to the home of her daughter who was then married and was about to be confined. The defendant's version appears to be the more reasonable one and the trial court so expressed himself in his memorandum opinion. Plaintiff took Jane, the baby daughter of the parties, with her. On February 17, 1953, she wrote the defendant as follows:

"I am writing to let you know that Jane is just fine and every thing is O.K. here and how is the Boy's come along by now hope they are O.K."

The relationship between the parties had been far from cordial for over a year due to the plaintiff's indiscreet actions with respect to other men.

On February 19 the plaintiff wrote a friend stating that she had a job in Billings and liked it fine. She said she came on the train and would have stopped but didn't have time and "I had to come at once and I couldn't even tell O.B. so I don't now how he will feel about it." She also said:

"I am going to stay and after while I am comeing after the car and the too Boys. I share miss them and I like it hear just fine and I will like it better when O.B. get here for I share miss him like every thing."

O.B. was a middle aged neighbor and a source of part of the difficulty between the plaintiff and her husband. O.B. was later supplanted in the plaintiff's affections by one C.M.L. who is the man with whom the trial court found the plaintiff committed adultery. Plaintiff's language as well as her conduct was indecent. She frequently used a crude but not uncommon expression attributing canine ancestry to the objects of her wrath. The record discloses that in October 1953 the plaintiff and her two boys were occupying a small apartment in Billings with a man who had two small daughters. This is the man referred to in the record as C.M.L. At the time of the trial in December 1953 the plaintiff testified she was supporting herself and two boys by working as a dishwasher in a Billings cafe.

 The evidence clearly shows that the plaintiff voluntarily left the home of the parties and thereafter chose to live with a paramour rather than return to her lawful husband. It is the rule that under such circumstances a wife is not entitled to permanent alimony. 17 Am.Jur., Divorce and Separation, Section 616; 27 C.J.S., Divorce, § 229, page 942; Marriage, Divorce, Separation and Domestic Relations, Schouler, 6th Edition, Section 1803. The plaintiff contends that this rule has no application to the award made by the trial court in this case. It is pointed out that Section 14-0524, NDRC 1943, provides that:

"When a divorce is granted, the court shall make such equitable distribution of the real and personal property of the parties as may seem just and proper, * * *."

It is argued that the court made the award of $2,000 to the plaintiff "as and for her services and property settlement in full" and that it was just and proper that he do so under the provisions of Section 14-0524, supra.

In Ruff v. Ruff, 78 N.D. 775, 52 N.W.2d 107, 108, Syllabus Paragraph 4, we said:

"In acting pursuant to the provisions of Section 14-0524, NDRC 1943, providing that 'When a divorce is granted, the court shall make such equitable distribution of the real and personal property of the parties as may seem just and proper,' the court may consider the respective ages of the parties; their earning ability; the conduct of the parties during the marriage and its duration; their station in life; their health and physical condition; the necessities of the parties and their

circumstances, financial and otherwise; the value and income-producing capacity of the property, and whether it was accumulated before or after marriage, and the efforts and attitude of the parties toward its accumulation."

■ The question here is not whether the court had power under the statute to make the award but whether under the facts and circumstances he abused his discretion in doing so.

In Heath v. Heath, 103 Fla. 1071, 138 So. 796, 797, 82 A.L.R. 537, the court upheld an award to an adulterous wife where it appeared that the wife's services and her invested capital contributed to the value of the husband's business properties. But in doing so, the court said:

"Such an allowance is not alimony and should never be made in any case unless shown to be warranted by special facts and circumstances which support a finding of an equity in the husband's property arising in favor of the wife from contributions of funds and services made by her toward its accumulation over, above, and beyond the performance of ordinary marital duties toward the husband."

■ Some evidence was introduced regarding the amount of work the plaintiff's two boys did about the farm. The presence of those children adds nothing to the plaintiff's claim for a share of the defendant's property.

"A husband is not bound to maintain his wife's children by a former husband, but if he receives them into his family and supports them, it is presumed that he does so as a parent and when such is the case, they are not liable to him for their support, nor he to them for their services." Section 14–0909, NDRC 1943.

See also Nelson on Divorce and Annulment, 2nd Edition, Section 14.80; 27 C.J.S., Divorce, § 321 b., page 1222; Marriage, Divorce, Separation and Domestic Relations, Schouler, 6th Edition, Section 686.

The record contains no evidence of the value of defendant's property or the amount of his annual income. It shows that at the time of the marriage the defendant owned a farm of 240 acres on which there was a house he had started to build in 1948. The size of the house is not given. At the time of trial he still owned the same amount of real estate. He had nine head of cattle acquired or raised after the marriage. He owned some farm machinery with his brother. The size of the unit would indicate a farm income somewhat less than the average.

The plaintiff testified that the defendant forced her to dig two ditches 6 feet deep and 20 feet long, one extending from the house to the well, and the other to a cesspool. The defendant says he did not force her to do anything like that but that she did come out and help. This is the only testimony regarding services performed by the plaintiff not arising from the normal duties of a farm wife.

■ The plaintiff brought to the home her daughter and two sons by a former marriage, where they became a part of the family. The daughter left and married some two years later. The boys stayed with the defendant until several weeks after the plaintiff left. There is no contention that she brought anything with her except her family. She still has the family but her responsibility has been lightened in the intervening time by the marriage of her daughter and the growth of her sons. On the other hand, the responsibility of the defendant has been materially increased. He now has a small daughter to care for and educate. His mother is assisting him in meeting that responsibility by assuming the duties of housekeeping and caring for the child in his home. It would seem unjust and improper that his responsibility should be further increased by requiring him to pay any sum to the plaintiff as or in lieu of a division of property. The judgment appealed from is modified by striking

therefrom paragraph IV thereof directing payment by the defendant to the plaintiff of the sum of $2,000 and as so modified the judgment is affirmed.

BURKE, C. J., and SATHRE, JOHNSON, and GRIMSON, JJ., concur.