No. 89-166

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

_____

IN RE THE MARRIAGE OF
LORRAINE ALICE BOURQUE,

        Petitioner and Respondent,

   and

JOSEPH HENRI BOURQUE,

        Respondent and Appellant.

_____

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Thomas Olson, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Eula Compton, Bozeman, Montana

    For Respondent:

        Linda McNiel, Bozeman, Montana

_____

Submitted on Briefs: Aug. 17, 1989

Decided: January 9, 1990

Filed:

'90 JAN 9 PM 3 41
FILED
ED   CLERK
MONTANA SUPREME COURT

_____
           Clerk

Justice John C. Sheehy delivered the Opinion of the Court.

Lorraine Bourque petitioned the District Court, Eighteenth Judicial District, Gallatin County, seeking modification of the parties' property settlement. Respondent Joseph Bourque petitioned for a modification of the maintenance agreement. The court granted Lorraine Bourque's motion for property settlement modification, denied Joseph Bourque's motion to modify maintenance, and awarded Lorraine Bourque $7,404.25 in maintenance arrearages and education support. Joseph Bourque appeals.

The issues raised by Joseph Bourque are:

1) Whether the District Court erred in awarding Lorraine Bourque house sale proceeds in excess of $30,000.

2) Whether the District Court erred in denying Joseph Bourque's request that his maintenance obligation be terminated.

Joseph and Lorraine Bourque were divorced in 1980. The parties entered into a support and property settlement that provided that Joseph would pay Lorraine the sum of $500 per month, with yearly increases commensurate with increases in Joseph's earnings. At the end of eight years, the payments were to be reduced by half, with further reductions allowed to reflect increases in Lorraine's earnings. Medical and educational costs were also provided to Lorraine, to be terminated upon remarriage, attainment of "ample employment" or the conclusion of eight years from the date of the agreement. Finally, the agreement provided that the parties

would divide equally the proceeds from the sale of their house.

Efforts to sell the house for $95,000 were unsuccessful. In 1982, an offer of $70,000 was made for the house. Lorraine Bourque was reluctant to accept the offer until Joseph agreed to modify the property settlement to provide Lorraine with $30,000 from the proceeds, the remainder to go to him. A proposed modification agreement was drafted but apparently never executed. However, an escrow agreement was prepared by Lorraine Bourque's lawyer, and signed by all parties. An attached exhibit to the escrow agreement provided as follows:

> Prepayments and the balloon
> payment shall first be used
> to satisfy the existing
> encumbrances and the balance
> to Lorraine Bourque and Joseph
> Bourque in such a manner that
> Lorraine Bourque shall have
> received a total of $30,000.00
> from the net proceeds of
> this sale (including the down
> payment) and Joseph Bourque
> shall receive the balance of
> the net proceeds.

The escrow agreement itself however assigned the balances on a percentage basis, with Lorraine to receive 72% and Joseph 28%.

Joseph asserts that this 72/28 split contemplated only the monthly payments made by the buyers and not the balloon payment. Buyers made 60 payments totaling $12,180.00. Of this, Lorraine received $8,769.60, or approximately 72%, and Joe received $3,420.00, or approximately 28%.

- 3 -

Problems arose when the purchasers of the Bourque home paid the entire principal remaining, $51,499.59, in August of 1987. The First Security Bank of Bozeman paid out $5,342.75 in miscellaneous costs, leaving $46,156.84 to be divided between Joe and Lorraine. The bank paid Lorraine $33,232.92, or 72% of the balance. Joe was paid the remaining 28%, or $12,923.91. Lorraine had previously been paid $5,000.00 from down payments. The controversy centered on the amount paid to Lorraine. Joseph asserted that Lorraine was to receive only $25,000.00 in the final payment, giving her a total of $30,000.00. Joseph claimed that Lorraine had been overpaid by $8,232.92, and requested Lorraine to remit that amount to him. In a letter to Joseph, Lorraine admitted she had expected a $25,000 payment, but attributed that figure to error by Joseph in the division, and refused to give him the $8,232.92.

Joseph contacted the bank and escrow agent, informing them of the alleged overpayment. The Bank in turn suggested to Joseph to mitigate his damages by withholding maintenance payments due Lorraine. On advice of his attorney, Joseph ceased his maintenance payments to Lorraine. He then moved for a stay of execution of the 1980 decree of dissolution, which was granted on March 8, 1988.

On April 4, 1988, Lorraine Bourque moved for an order of modification of decree, compelling maintenance, medical and education payments, and for attorney's fees.

Trial was held on September 2 and September 14, 1988, and judgment entered on November 30, 1988. The court ruled the escrow agreement to be a valid modification of the decree of dissolution, and the payments therefore correct. The court also found Joseph owed $7,213.50 in maintenance arrearages and $290.75 in education costs. The court determined that maintenance payments were to be reduced to $343.50 per month as of August 1988. No attorney's fees were granted. From that judgment, Joseph appeals.

Joseph contends that the District Court erred in awarding Lorraine Bourque more than $30,000.00 from the proceeds of the house sale. The basis of his contention is that the court wrongfully interpreted the escrow agreement and the attached exhibit which provided for a $30,000.00 payout to Lorraine Bourque.

When the issue of modification first surfaced in 1982, the attorney for Lorraine drafted an agreement wherein both parties agreed Lorraine would receive $30,000.00 from the sale, Joseph the remainder. However, no executed copy of this agreement has been found, and cannot, therefore, be relied upon.

Lorraine Bourque's attorney also drafted the escrow agreement, which the court relied upon. Section II of the agreement is headed "Payments." Subparagraph B is headed "Unpaid Balance." Listed under that heading are two checked provisions. One denotes that payments will be made monthly. The second provision checked is "Other." Typed following is

language that a balloon payment of the balance is due July 1, 1988. Directly following is subparagraph C, which provides the method of distributing payments. The heading "Other" appears again, with explanation of how the balance is to be paid: 72% to Lorraine Bourque and 28% to Joseph Bourque.

Joseph's contention that the 72/28 ratio applies only to monthly payments is not borne out by the escrow document. Reference to "Other" appear to speak to the balloon payment, not the monthly payment. The escrow agreement in and of itself is clear. Taken with the attached exhibit, it is not clear. The question then arises: why would Joseph sign a document that has two distinct provisions which cannot be reconciled? The answer is unclear, but it must be considered that 72% ratio was supposed to come to approximately $30,000.00. Unfortunately, the computation did not approximate $30,000.00. $30,000.00 is roughly 65% of $46,156.84, the amount to be divided between the parties.

Faced with this document so lacking in clarity, the District Court attempted to reconcile the irregularities and reach a reasonable interpretation. The court looked to the intent of the parties in entering an agreement to modify the division of property. The modification's purpose was to serve both parties. Lorraine was to be guaranteed sufficient funds from a substantially lower sale price than she thought otherwise acceptable. Joe Bourque was to get a needed infusion of cash quickly, rather than wait for a buyer to meet the original $95,000.00 sale price.

The district judge took into account that Joseph, though not the drafter of the escrow agreement/dissolution modification, was the instigator of the modification. The court took this and other factors into consideration during its inquiry into the intent of the agreement.

The court specifically found the 72/28 provision to rule, and so discarded the unclear attached exhibit provision. In interpreting the instrument, the court specifically inquired as to the instrument's intent and its legal consequences, and confine its inquiry as to what was intended in the language of the instrument. This is properly within the court's scope under §§ 28-2-1613 and 28-2-1611, MCA.

Joseph contends that if the conflicting portions cannot both be taken together so as to give effect to every part of the contract and the intentions of the parties, the modification should be voided and the original 50/50 split contained in the dissolution should rule. However, it is a time-honored maxim of jurisprudence which states "an interpretation which gives effect is preferred to one which makes void." Section 1-3-232, MCA. Such an interpretation is acceptable if it is reasonable. Section 1-3-233, MCA. The District Court's interpretation was reasonable, and this Court will not set aside findings by the District Court unless clearly erroneous. Rule 52(a), M.R.Civ.P.

Joseph next contends that the District Court erred in not terminating his maintenance obligation. Specifically,

- 7 -

Joseph contends that ample evidence exists that Lorraine is able to support herself. In addition, he contends her living situation is quasi-marital in nature, and that he should not have to aid in the financial support of her household.

The parties' 1980 support settlement agreement provided $500 per month to Lorraine Bourque, with annual increases each October 11 as Joseph's income increased. At the end of the eight years the payments were to be reduced "to a maximum of one-half of the then current payment." In addition, those payments were to be reduced as Lorraine's earnings increased. The District Court halved the support payments as of August 1988 to $343.50 per month.

Joseph contends that the support should be terminated altogether due to changed circumstances. He is now retired and receives $1,189 per month in retirement benefits. He contends that Lorraine Bourque was not forthright with the District Court, and is currently receiving income from $1,700 to $2,000 per month, substantially more than she claimed.

Joseph presents this Court with evidence that Lorraine Bourque altered documents to hide her true income from the District Court. While it appears these charge has some basis in fact, he did not raise an issue of fraud in the lower court proceedings, and this Court will not consider issued raised on appeal for the first time. Wyman v. DuBray Land Realty (Mont. 1988), 752 P.2d 194, 45 St.Rep. 621.

Joseph also presented evidence at the lower level that Lorraine Bourque lives with another man in a "quasi-marital" relationship.  Lorraine denies this.

Both the parties' support agreement and the guidelines of § 40-4-208, MCA, provide that maintenance will cease upon remarriage, which has not occurred.  The District Court properly retained one-half of the support obligation.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

_____
The Hon. L. C. Gulbrandson