1997 ND 122

**Beverly J. RATAJCZAK, Plaintiff, Appellee and Cross– Appellant,**

v.

**Ervin S. RATAJCZAK, Defendant, Appellant and Cross– Appellee.**

Civil No. 960367.

Supreme Court of North Dakota.

June 24, 1997.

Rehearing Denied July 17, 1997.

---

NEUMANN, Justice.

[¶ 1] Ervin Ratajczak appeals from the district court's judgment awarding Beverly Ratajczak $2,500 monthly spousal support. We affirm.

[¶ 2] Beverly and Ervin Ratajczak were married on October 24, 1970 in Minnesota. When they married, the parties were nineteen-year-old high school graduates.

[¶ 3] Early in the marriage, Ervin attended technical school to receive a degree in parts' management. He worked various jobs until 1979, when he began a career with Thermo Air Sales Corporation in Fargo, North Dakota. Since then, Ervin has worked as a sales representative at Thermo Air to support his family. Beverly, on the other hand, was a traditional homemaker, caring for the children and the marital home. During the first five years of their marriage, Beverly did not work outside the home. Thereafter, Beverly worked sporadically in a variety of low-paying, unskilled positions.

[¶ 4] In 1995, Beverly filed for divorce. During the proceedings, Beverly submitted evidence showing Ervin's income had gradually increased over the past ten years to approximately $100,000 annually. Beverly, on the other hand, never earned more than $10,000 annually, working at minimum wage. Beverly also submitted evidence suggesting Ervin was a heavy drinker, and had physically and emotionally abused her throughout their marriage. In November 1996, the district court issued its judgment, awarding Beverly $2,500 in monthly spousal support.

[¶ 5] Ervin appeals, arguing (1) Beverly's motion to supplement the record with a letter written by Ervin's attorney to the district court should be denied; (2) the district court's findings of fact are inadequate to support the spousal support award; (3) Beverly is not entitled to spousal support because she is guilty of marital misconduct; (4) the district court erred by allowing Beverly to discuss evidence of spousal abuse; and (5) the record does not support a finding that Beverly should receive $2,500 in monthly spousal support.

Jonathan T. Garaas, of Garaas Law Firm, Fargo, for defendant, appellant and cross-appellee.

Michael L. Gjesdahl, Fargo, for plaintiff, appellee, and cross-appellant.

## I

[¶ 6] Ervin argues this court should deny Beverly's motion to supplement the record on appeal with a letter written by Ervin's attorney to the district court. Ervin contends the letter is not part of the record and, therefore, the motion should be denied.

[¶ 7] The letter at issue was written by Ervin's attorney to the district court, commenting on the proposed findings of facts, conclusions of law, and order for judgment prepared by Beverly's attorney. As we prefer, Beverly originally moved the district court to include the letter in the record, however, the district court denied her motion. On appeal, Beverly moved to include the letter in the record. Beverly argues the letter reflects that, while Ervin criticizes the findings of fact on appeal, Ervin could have asserted these criticisms to the district court but did not.

[¶ 8] Rule 7.1(b)(1), N.D.R.O.C., explains: "Preparation of proposed findings of fact and conclusions of law ... may be assigned by the court to one or more parties. Any findings of fact and conclusions of law prepared by one or more parties shall be served upon all other parties for review and comment. The other parties may serve a response in writing...."

[¶ 9] Ervin's attorney wrote to the district court, responding to the proposed findings of fact and conclusions in accordance with Rule 7.1(b)(1), N.D.R.O.C. Rule 10(a), N.D.R.App.P., provides that the record on appeal includes all original papers filed in the trial court. Under Rule 10(h), N.D.R.App.P., the Supreme Court has the authority to correct an omission in the record to ensure the record conforms with the truth. The letter Ervin's attorney wrote to the district court, prepared according to Rule 7.1(b)(1), reflects Ervin had the opportunity to comment on the findings of facts. It is an original paper sent to the district court and, therefore, should be part of the record. Beverly's motion on appeal to correct and modify the record by including the letter is granted.

## II

[¶ 10] Ervin argues the district court's findings of fact are inadequate to support its judgment awarding Beverly $2,500 in monthly spousal support. Specifically, he notes the district court did not make a finding concerning his yearly income.

[¶ 11] During the proceedings below, the district court ordered Beverly's attorney to write proposed findings of fact. Thereafter, as noted above, Ervin had the opportunity to review and comment on the proposed findings. The record indicates Ervin's attorney responded to the proposed findings with a two-page letter, making nine specific requests. Ervin's attorney did not suggest the proposed findings were inadequate because they did not include a finding concerning Ervin's income. This being the case, we hesitate to address this argument on appeal, when Ervin clearly had the opportunity to raise it below and did not do so. *Cf. Wenzel v. Wenzel,* 469 N.W.2d 156, 158 (N.D.1991) (stating "issues not raised in the trial court cannot be raised for the first time on appeal"). Nevertheless, because a finding on each spouse's income is especially important in matters concerning spousal support, we conclude this matter merits discussion.

[¶ 12] A review of the record indicates the district court was provided with Ervin's gross income from 1985 through 1995. Specifically, the district court was provided with evidence showing Ervin's income had steadily increased. During the last three years, Ervin earned between $80,000 and $100,000 annually. The record also shows Beverly earned approximately between $4,000 and $8,000 annually over the past ten years. In its conclusions of law, the district court stated it carefully considered the *Ruff–Fischer* guidelines, including "Bev's abilities and needs, Ervin's abilities and needs, and the notion that the parties' should share in the reduction in their respective standards of living."

[¶ 13] As Ervin suggests, the district court's discussion of the parties' income is, at best, minimal. However, "unlike child support awards, detailed findings of fact [for spousal support awards], while helpful, are not required, provided we can determine, on appeal, the reasons the trial court granted the award." *Wolf v. Wolf,* 557 N.W.2d 742,

744 (N.D.1996). From the record, we can discern Ervin's approximate income and the district court's reasoning in determining spousal support. Thus, although deficient, the district court's findings of fact do not require remand.

### III

[¶14] Ervin argues Beverly waived her claim for spousal support because she did not specify in the interrogatories the alimony she would be requesting. At the beginning of the trial, Ervin raised this argument to the district court. Addressing the matter, the district court asked Ervin if he wanted to or needed to delay the case. Ervin responded, stating a delay was not necessary. The district court then overruled the argument and asked the attorneys to proceed with the case.

[¶15] A district court's decision concerning discovery will not be disturbed unless this court finds the district court abused its discretion. *Smith v. State,* 389 N.W.2d 808, 811 (N.D.1986). We do not think the district court abused its discretion when it determined Beverly did not waive her claim for spousal support by failing to supplement the interrogatories to state the exact amount of alimony she would be requesting. According to the record, Beverly did not withhold any information or requests concerning her income or expenses. Ervin had all relevant information to help him determine his potential spousal support. Although Beverly may have failed to respond to a question in the interrogatory, Ervin could have moved to compel discovery, but did not, Rule 37(a)(2), N.D.R.Civ.P.; nor did he accept the court's offer of a continuance to eliminate any possibility of prejudice. Furthermore, under the doctrine of harmless error, we will not disturb a judgment unless "refusal to take such action appears to the court inconsistent with substantial justice." Rule 61, N.D.R.Civ.P. Because Beverly disclosed all relevant facts, and because Ervin declined the offer of a continuance and failed to seek other sanctions, Ervin was not prejudiced by Beverly's omission. Therefore, we will not disturb the district court's decision.

### IV

[¶16] Ervin argues Beverly is not entitled to spousal support because she is living with another man. He relies on *Hegge v. Hegge,* 236 N.W.2d 910 (N.D.1975), in which this Court reversed an award of alimony to a wife who had several extramarital affairs. In *Hegge,* citing *Anderson v. Anderson,* 68 N.W.2d 849 (N.D.1955), this court held, as a matter of law, that a divorced wife who had left her home to live with a paramour was not entitled to permanent alimony. *Hegge,* 236 N.W.2d at 917. We also suggested N.D.C.C. § 14–07–11, which provided "a husband abandoned by his wife is not liable for her support until she offers to return," should be extended beyond a marital relationship, and should deny post-divorce support to a wife who abandoned her husband. *Id.* at 918. North Dakota domestic law has developed, evolved, and changed since this Court's decisions in *Anderson* and *Hegge.*

[¶17] In *Johnson v. Johnson,* 544 N.W.2d 519, 521 (N.D.1996), we addressed *Hegge* and held the application of N.D.C.C. § 14–07–11 applies only to marital relationships, and should not be applied in circumstances concerning support obligations after divorce. To the extent *Hegge* said otherwise, it was overruled by *Johnson.* Therefore, *Hegge* is not controlling here.

[¶18] Nevertheless, Ervin contends that under *Hegge,* because Beverly committed marital misconduct, specifically adultery, she is not entitled to spousal support. First, we note the district court did not find marital misconduct. Instead, the district court specifically found Ervin failed to prove, by a preponderance of evidence, that Beverly had engaged in marital misconduct, and also concluded that, even if she had, it would have occurred after the parties' separation and therefore would be irrelevant.

[¶19] Contrary to Ervin's contentions, marital misconduct, such as adultery, does not raise a legal bar precluding any possibility of spousal support. Insofar as *Anderson* and *Hegge* held to the contrary, they are outdated. *See Bader v. Bader,* 448 N.W.2d 187, 190 (N.D.1989). We have repeatedly stated spousal support should be awarded only after consideration of the *Ruff–*

*Fischer* factors. *Wiege v. Wiege,* 518 N.W.2d 708, 711 (N.D.1994). Under the *Ruff–Fisher* guidelines, we examine:

> "The respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material." *Id.*

▮ [¶ 20] Although "the conduct of the parties is a factor to be considered in ordering spousal support, *it is but one factor* and there is no requirement that the award be based on conduct alone." *Bader,* 448 N.W.2d at 190 (emphasis added). A liaison with another person does not disqualify a person from an award of spousal support. *Id.* at 190 (upholding the award for spousal support, even though the wife became involved with another man in the final month the couple lived together). Thus, Beverly should not be denied the possibility of spousal support as a matter of law due to alleged marital misconduct.

## V

▮ [¶ 21] Ervin argues the district court erred by allowing Beverly to discuss evidence of spousal abuse during the divorce proceedings. Ervin contends the evidence of spousal abuse is irrelevant because Beverly condoned the activity under N.D.C.C. § 14–05–13, by continuing to live with Ervin after the abuse. Ervin, however, misinterprets N.D.C.C. § 14–05–13.

[¶ 22] Section 14–05–10, N.D.C.C., outlines four affirmative defenses a party may plead and prove to oppose an action for divorce. "Condonation" is one of the defenses. Under N.D.C.C. § 14–05–13, "condonation" is "the

conditional forgiveness of a matrimonial offense constituting *a cause of divorce."* *Id.* (Emphasis added). The party claiming "condonation" can ask the court to deny the divorce based on:

> "1. A knowledge on the part of the condoner of the facts constituting the cause of divorce;
>
> 2. Reconciliation and remission of the offense by the injured party; and
>
> 3. Restoration of the offending party to all marital rights." N.D.C.C. § 14–05–13.

[¶ 23] If Ervin were opposing the divorce based on N.D.C.C. § 14–05–10, "condonation" might have some relevance in this proceeding. However, Ervin has agreed to the divorce based on irreconcilable differences, and instead, attempts to use "condonation" to prevent Beverly from proving she was a victim of spousal abuse. "Condonation" under N.D.C.C. § 14–05–13 has no legal significance here.

▮ [¶ 24] Beverly attempted to prove she was a victim of spousal abuse for purposes of determining spousal support. As stated above, we look to the *Ruff–Fischer* guidelines to decide spousal support. The *Ruff–Fischer* guidelines specifically include fault as a factor in determining support. *Wiege,* 518 N.W.2d at 711. Accordingly, Ervin's violent behavior is a relevant factor for the court to consider in determining spousal support. "Condonation" is an affirmative defense to a cause of action for divorce; it is not a tool available to prevent relevant evidence from being admitted in determining spousal support.[1] Ervin's argument is without merit.

## VI

▮ [¶ 25] Ervin argues the record does not factually support a finding that Beverly should receive $2,500 in monthly spousal support. Ervin contends Beverly's current income provides her with almost enough mon-

---

1. Ervin further failed to note that even if condonation is relevant, N.D.C.C. § 14–05–13 specifically states "[w]hen the cause of divorce consists of a course of offensive conduct, or arises in cases of cruelty from successive acts of ill treatment, . . . cohabitation, or passive endurance, or

conjugal kindness shall not be evidence of condonation of any of the acts constituting such cause, *unless accompanied by an express agreement to condone."* Ervin did not show Beverly had expressly agreed to condone the spousal abuse.

ey to cover her living expenses. According to Ervin, if Beverly exhausts her income, she can use the $32,000 she received from the property settlement for her remaining expenses.

[¶ 26] A trial court's findings on spousal support will not be reversed unless they are clearly erroneous. *Wald v. Wald,* 556 N.W.2d 291, 296 (N.D.1996). Again, we note the *Ruff–Fischer* guidelines should be considered when determining spousal support. Specifically relevant here are the parties' ages, earning abilities, health, conduct, and the duration of their marriage.

[¶ 27] Ervin and Beverly were married for twenty-six years. During the marriage, Ervin fostered a lengthy and healthy career at Thermo Air Sales Corporation. In the most recent years before the divorce, Ervin earned between $80,000 and $100,000 annually. By comparison, Beverly forwent any realistic hope of a career in order to care for her family and the marital home. Although she worked outside the home periodically throughout the marriage, the jobs were unskilled and low-paying. At the time of the divorce, Beverly was working at a restaurant earning $6 per hour, grossing approximately $12,480 per year. The record shows Ervin's income is eight to ten times greater than Beverly's. Due to the parties' ages and health conditions, it is hard to imagine this disparity closing in the future. Ervin testified he is in good health. Beverly, on the other hand, suffers from a worn disk in her neck, back pain, and has difficulty breathing. The record also reflects Ervin abused alcohol during the marriage and, at times, emotionally and physically abused Beverly. Specifically, the district court found Ervin had been abusive toward Beverly and "Ervin's alcohol consumption has contributed in substantial part to his abusive conduct."

[¶ 28] Nevertheless, Ervin argues Beverly is not entitled to spousal support because she does not need the support to cover her monthly expenses, whereas Ervin needs his income. In making this argument, Ervin directs the court to evidence suggesting Beverly's monthly expenses are only $1,479, while Ervin's monthly expenses are $4,907.

[¶ 29] The fact that Beverly can survive living in a small one-bedroom rental property earning minimum wage, while Ervin lives in the marital home maintaining a level of expenditure more than three times greater than Beverly's, does not mean Beverly is not entitled to support. First, we note Ervin's contention that Beverly's monthly expenses are $1,479, does not include Beverly's debt payments, car insurance, and possible educational expenses which would increase her expenses between $500 and $1,000. Ervin's calculations concerning his own expenses, on the other hand, does include his debt payments, car insurance and his adult son's educational expenses. Second, if anything, the monthly expense accounts indicate Ervin, who requires over $1,500 more than Beverly to pay his monthly bills,[2] and more than $200 monthly to pay for his boat and snowmobiles, is living at a much higher standard of living than Beverly.

[¶ 30] In North Dakota, we attempt to avoid such inequities after a long-term marriage, and try to "balance the burden created by a divorce when it is impossible to maintain two households at the pre-divorce standard of living." *Wald,* 556 N.W.2d at 297 (citing *Wahlberg v. Wahlberg,* 479 N.W.2d 143, 145 (N.D.1992)). Factors we consider include "continuance of a standard of living [for the disadvantaged spouse] and a disadvantaged spouse's lack of adequate retirement savings." *LaVoi v. LaVoi,* 505 N.W.2d 384, 386 (N.D.1993) (citations omitted). Although Ervin wants to maintain his standard of living at a pre-divorce status, we cannot allow it at Beverly's expense. Ervin suggests Beverly can use her property settlement to cover living expenses. However, Beverly should not have to dissipate her property award to survive. *Heley v. Heley,* 506 N.W.2d 715, 720 (N.D.1993); *Sateren v. Sateren,* 488 N.W.2d 631, 634 (N.D.1992). Given the length of the marriage, the sub-

---

2. According to the monthly expenses presented to the district court, Ervin requires $2,734 for monthly expenses including his house payment, telephone, laundry, household repairs, food, automobile, clothing, grooming, hobbies and miscellaneous expenses. Beverly, on the other hand, only requires $1,209 for essentially the same items. This equals a $1,525 disparity.

stantial disparity in earning power, the likely inability for Beverly to increase her earning capacity, Beverly's health problems, and Ervin's abusive behavior, we conclude the district court's award is not clearly erroneous.

## VII

[¶ 31] On appeal, Beverly asks this court to grant her attorney fees because this appeal is frivolous. Considering the deficiency of the findings of fact, we cannot say this appeal is frivolous. Beverly is, however, entitled to request the district court to consider an award of attorney's fees based on need and equity. N.D.C.C. § 14–05–23.

[¶ 32] We affirm the judgment of the district court.

[¶ 33] VANDE WALLE, C.J., and MARING, SANDSTROM and MESCHKE, JJ., concur.

