1997 ND 187

**Duane E. CERMAK, Plaintiff, Appellant, and Cross–Appellee,**

v.

**Loretta R. CERMAK, Defendant, Appellee, and Cross–Appellant.**

**Civil No. 970046.**

Supreme Court of North Dakota.

Sept. 30, 1997.

William D. Schmidt, Schmitz, Moench & Schmidt, Bismarck, for plaintiff, appellant, and cross-appellee.

Richard B. Baer, P.C., Bismarck, for defendant, appellee, and cross-appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Plaintiff Duane E. Cermak appealed from the Burleigh County District Court's Order denying his motion to reduce or terminate his spousal support obligation. The district court concluded that a "live-in" relationship between Defendant Loretta R. Cermak and another man is not a remarriage; for the reasons contained herein below, we affirm.

I

[¶ 2] The Cermaks were married in June of 1964. Duane was granted a divorce from Loretta on January 11, 1995. In an Amended Judgment of January 23, 1995, the district court ordered Duane to pay Loretta permanent spousal support in the amount of $600 per month. The Judgment provided the permanent support was to cease upon the death or remarriage of Loretta. Duane had asked the district court to include a clause that would terminate spousal support upon the cohabitation of Loretta, but the court did not do so. The district court's Judgment was affirmed by this Court. *Cermak v. Cermak*, 544 N.W.2d 176 (N.D.1995) (affirming by summary opinion).

[¶ 3] In mid–1995, Loretta sold the real property she received under the terms of the Amended Judgment and took up residence with a man whom she had been seeing during the pendency of the divorce proceeding. Although Loretta moved in with the paramour while the prior appeal was pending, the effect of the "live-in" relationship was never reviewed by this Court. *Cermak*, 544 N.W.2d 176. Since taking up residence with

the man, Loretta has lived openly with him, but they have not married.

[¶ 4] In August of 1996, Duane filed a motion with the district court requesting his support obligation be reduced or terminated because Loretta was living with another man. Loretta filed a cross-motion asking Duane's motion be denied and requesting attorney's fees and costs. The district court issued an Order denying both motions. Duane and Loretta each appealed from the district court's Order.

## II

[¶ 5] Duane challenges the district court's ruling that (a) termination of his spousal support obligation is not warranted because cohabitation is not the same as remarriage, and (b) reduction is inappropriate because the same reasons for granting support still exist today. Loretta R. Cermak claims the district court erred in refusing to award her attorney's fees. We consider each of these issues in turn.

### A. *Termination of Spousal Support*

[¶ 6] Duane Cermak claims his spousal support obligation should be terminated because his former wife is regularly and openly cohabiting with another man. If Duane were merely arguing a change of circumstances, we would not reverse the district court's finding unless it was clearly erroneous. *Wheeler v. Wheeler,* 548 N.W.2d 27, 30 (N.D.1996) (citing *Hager v. Hager,* 539 N.W.2d 304 (N.D.1995) for the proposition that a material change of circumstances determination is a finding of fact subject to the clearly erroneous standard), N.D. R. Civ. P. 52(a). However, in the present case we are presented with the issue of whether, under North Dakota law, cohabitation by a recipient spouse is the equivalent of remarriage, sufficient to terminate permanent spousal support under the terms of the Amended

Judgment.[1] The district court concluded Loretta's "live-in" relationship is not equivalent to remarriage under North Dakota law. Implicit in this conclusion is an interpretation of North Dakota law. Because we are called to review the district court's interpretation of law, the question is fully reviewable. *Gabriel v. Gabriel,* 519 N.W.2d 293, 294 (N.D.1994) (citing *In Interest of Kupperion,* 331 N.W.2d 22, 27 (N.D.1983) (conclusions of law are fully reviewable on appeal)).

[¶ 7] Loretta Cermak acknowledges she is in a "live-in" relationship with another man. But merely cohabiting is insufficient to create a marital relationship in our State. North Dakota abrogated common-law marriages shortly after statehood. N.D.C.C. § 14–03–01 (Supp.1997) (providing only marriages entered into pursuant to state law are valid). *See Schumacher v. Great Northern Ry. Co. et al.,* 23 N.D. 231, 136 N.W. 85, 86 (1912) (noting the 1890 legislature clearly intended to abrogate nonceremonial marriages). Unless the statutory requirements are met, the fact of cohabitation alone is insufficient to create a legally recognized marriage. However, Duane argues Loretta's relationship is so much like a remarriage it is sufficient to invoke the provision in the Amended Judgment terminating his spousal support obligation.

[¶ 8] Permanent spousal support may be awarded when a spouse is "incapable of adequate rehabilitation or self-support." *Wiege v. Wiege,* 518 N.W.2d 708, 711 (N.D. 1994) (emphasis omitted). Although permanent spousal support continues the paying spouse's duty of support, the recipient spouse owes no reciprocal legal obligation of fidelity, respect or support. *See* N.D.C.C. § 14–07–01 (1991) (providing husband and wife owe a mutual obligation of respect, fidelity, and support), and N.D.C.C. § 14–07–03 (1991)

---

1. Even without a specific provision in the divorce decree, permanent spousal support may terminate upon the remarriage of the recipient spouse unless the recipient shows extraordinary circumstances. *Wiege v. Wiege,* 518 N.W.2d 708, 712 (N.D.1994) (holding the district court's failure to include a termination-upon-remarriage clause in its order was not clearly erroneous

because the decree can be modified under N.D.C.C. § 14–05–24 (1991) (providing that a court may modify its orders from time to time)). *But see Nastrom v. Nastrom,* 262 N.W.2d 487, 490 (N.D.1978) (holding it is improper to terminate alimony awarded as part of a property settlement).

(stating that husband and wife have a mutual duty to support each other).

[¶ 9] Here, although the Amended Judgment provided for termination upon the death or remarriage of Loretta, it made no mention of cohabiting.[2] While other state legislatures have specifically provided for cohabitation as a ground for termination of spousal support,[3] North Dakota has not enacted a similar law. Absent such a provision we will not attach marital obligations to a nonmarital relationship. *Abbott v. Abbott*, 282 N.W.2d 561, 566 (Minn.1979). *See, e.g., Kohler v. Flynn*, 493 N.W.2d 647, 649 (N.D. 1992) (holding the law on equitable distribution of marital property does not apply to the breakup of an engagement or living arrangement). In the present case, Duane asks us to interpret remarriage in a manner that recognizes a new relationship, a de facto marriage, having all the hallmarks of a common-law marriage. To do so would in effect recognize a common-law marriage when it has been specifically abrogated by our state legislature. *Schumacher*, 136 N.W. at 86. *See also* N.D.C.C. § 1–01–06 (1987) (providing there is no common law where the law is declared by the code). We will not attach an interpretation to the Cermak's divorce decree that contravenes an unambiguous state law.

[¶ 10] We agree with the district court that this relationship has none of the permanent benefits of a marriage. The Supreme Court of Maine stated the rationale for a "termination-upon-remarriage" clause in *Mitchell v. Mitchell*, 418 A.2d 1140, 1143 (Me.1980). "[I]t is against public policy in the ordinary case for one man to be supporting the wife of another who has himself assumed the *legal obligation* for her support." *Id.* (Emphasis retained). (Citation and quotation omitted). However, as the Maine Supreme Court recognized, "[t]his reasoning does not apply to the case of an unmarried cohabitant receiving alimony. Though unmarried cohabitants may voluntarily contribute to each other's support, *they have no legal obligation to pay.*" *Id.* (Emphasis added). In the case at bar, Duane asks us to interpret the divorce decree in a way that would leave Loretta with an uncertain means of support. The length of Loretta's relationship is unknown; it may last until her death, or may sour tomorrow. On this record, any support Loretta may receive from her cohabitant is provided from his benevolence and comes with no reciprocal or continuing obligation.

[¶ 11] Duane claims our decision in *Kohler v. Flynn*, recognizes a remedy in the event a live-in arrangement sours. In *Kohler* we discussed the well publicized decision of *Marvin v. Marvin*. *Kohler v. Flynn*, 493 N.W.2d at 648–49 (citing *Marvin v. Marvin*, 18 Cal.3d 660, 134 Cal.Rptr. 815, 557 P.2d 106 (1976)). However, we did not expressly recognize the right to bring a "palimony" action in North Dakota. *Id. See also Baker v. Baker*, 1997 ND 135, ¶ 12, 566 N.W.2d 806 (noting unmarried cohabitants cannot rely on equitable division of property). On the contrary, we observed a "palimony" rationale has no bearing on the breakup of an engagement or living arrangement in North Dakota. *Kohler*, 493 N.W.2d at 649 (holding equitable distribution is inapplicable and the law of partition of property controls the division of property among cohabitants).

[¶ 12] In *Kohler* we concluded "outside of marriage, judicial division of property

---

2. We recently examined a divorce decree that included a provision for termination upon the cohabitation of the recipient spouse. *Baker v. Baker*, 1997 ND 135, 566 N.W.2d 806. We noted we were not surprised that "cohabiting like husband and wife was made the functional equivalent of remarriage" in the divorce decree. *Id.* at ¶ 12.

3. *See Ala.Code* § 30–2–55 (1989) (providing alimony payments shall terminate upon proof the recipient spouse "is living openly or cohabiting with a member of the opposite sex"); *Cal. Fam. Code* § 4323 (West 1994) (creating a rebuttable presumption of decreased need when a recipient spouse "is cohabiting with a person of the opposite sex"); *Ga.Code Ann.* § 19–6–19(b) (Supp. 1997) (stating voluntary cohabitation in a meretricious relationship shall be grounds for modification of alimony); and *N.Y. Dom. Rel. Law* § 248 (McKinney 1986) (providing a court may modify a final judgment upon proof that "wife is habitually living with another man and holding herself out as his wife, although not married to such man").

ordinarily depends on common ownership." *Id.* at 649. In the instant case, Duane claims at a minimum, the law of partition of property would come into play in situations where individuals previously lived together. This argument ignores our holding in *Kohler* that mere cohabitation is not sufficient to create common ownership. *Kohler,* 493 N.W.2d at 649. "If live-in companions intend to share property, they should express that intention in writing." *Id.* Duane has failed to point to any written evidence giving Loretta any claim to the property of her unmarried cohabitant. To conclude Loretta's relationship is equivalent to remarriage would leave her unsupported should the nonobligatory relationship end.

 [¶ 13] Duane argues other states have held cohabiting so similar to remarriage that it terminates spousal support. Specifically, Duane refers us to the case of *Hammonds v. Hammonds,* 641 So.2d 1211 (Miss. 1994). In *Hammonds,* however, the Mississippi Supreme Court abandoned the automatic termination Duane suggests here. *Id.* at 1217. Prior to the *Hammonds* case, the courts in Mississippi terminated spousal support solely on the basis of cohabitation. *See, e.g., McRae v. McRae,* 381 So.2d 1052, 1055–56 (Miss.1980) (holding former spouse's abode with a man who was not her husband forfeited her right to future alimony). In *Hammonds,* Mississippi joined the modern trend among jurisdictions in holding cohabitation cannot be the sole basis for termi-

nation of spousal support.[4] *Hammonds,* 641 So.2d at 1217 (advising "that in determining the effect of post-divorce cohabitation on a recipient spouse's alimony entitlement, financial, rather than moral aspects of the cohabitation are to be considered").

[¶ 14] Duane's argument effectively asks us to adopt the antiquated view and terminate Loretta's spousal support solely on the basis of her unmarried cohabitation. We refuse the invitation to turn back the clock on a watch that has not even been set. We adopt the modern view that cohabitation cannot be the sole basis for termination of spousal support at least where cohabitation is not included as a condition for termination in the divorce decree.[5] *See* footnote 2 discussing *Baker,* where a "termination-upon-cohabitation" clause was included in the divorce decree.

[¶ 15] Finally, Duane asserts public policy favors denying Loretta's future spousal support payments. Specifically, Duane cites North Dakota's "Unlawful cohabitation" statute making it a Class B misdemeanor for unmarried persons to live openly and notoriously as a married couple with a person of the opposite sex. N.D.C.C. § 12.1–20–10 (1985). Duane did not present this public policy/morality issue before the district court. "We have repeatedly held that issues not raised in the trial court cannot be raised for the first time on appeal." *Wenzel v. Wenzel,* 469 N.W.2d 156, 158 (N.D.1991). Thus, we

4. This is also the view most accepted in our geographic region. Both Minnesota and Wisconsin have altered their position to conform with the modern view. *Compare Taake v. Taake,* 70 Wis.2d 115, 233 N.W.2d 449 (1975) (holding cohabiting is a change of circumstances affecting the responsibility to pay), with *Van Gorder v. Van Gorder,* 110 Wis.2d 188, 327 N.W.2d 674 (1983) (holding cohabiting is only a factor to be considered and a change of circumstances must relate to a change in the financial circumstances of the parties); *also compare Martens v. Martens,* 211 Minn. 369, 1 N.W.2d 356 (1941) (holding an ex-wife's sexual misconduct could be a factor in determining whether to terminate alimony), with *Sieber v. Sieber,* 258 N.W.2d 754, 758 (Minn. 1977) (holding a meretricious relationship should be disregarded "except in so far as it might improve an ex-spouse's economic well-being"). *See also Myhre v. Myhre,* 296 N.W.2d 905, 908 (S.D.1980) (adopting "the position that cohabitation, in and of itself, is not a circum-

stance upon which an order modifying or terminating alimony payments can be based"), and *In re Marriage of Bourque,* 241 Mont. 38, 785 P.2d 699 (1990) (holding a statute and provision in the divorce decree terminating maintenance upon the remarriage of the recipient were not invoked by the recipient's "quasi-marital" relationship).

5. This view is consistent with our decision in *Ratajczak v. Ratajczak,* 1997 ND 122, 565 N.W.2d 491. In *Ratajczak* we discussed a "live-in" relationship that occurred after the parties had separated, but *before* the divorce decree was entered. *Id.* at ¶¶ 16–18. We concluded a liaison does not disqualify a person from an award of spousal support. *Id.* at ¶¶ 19–20. Here we are presented with a situation where Loretta engaged in a live-in relationship *after* the Amended Judgment was issued. Considering our decision in *Ratajczak,* the present case offers even less reason to deny future spousal support.

refuse to consider the issue for the first time here.[6]

[¶ 16] Accordingly, we hold a recipient spouse's unmarried cohabitation is not a re-marriage and is insufficient, alone, to terminate a permanent spousal support obligation.

### B. *Reduction of Spousal Support*

[¶ 17] Alternatively, Duane Cermak claims the district court erred in refusing to reduce his spousal support obligation. The district court's determination as to whether there has been an unforeseen material change in circumstances justifying a reduction of support is a finding of fact that will not be set aside on appeal unless it is clearly erroneous. *Wheeler*, 548 N.W.2d at 30, N.D. R. Civ. P. 52(a).

[¶ 18] Loretta R. Cermak claims her "live-in" relationship was contemplated by Duane and the court prior to the issuance of the Amended Judgment in this case. A change of circumstances must be unforeseen at the time of the original divorce decree. *Wheeler*, 548 N.W.2d at 30. That is to say the change must not be contemplated by the parties at the time of the divorce. *Id.* The record on appeal clearly establishes Duane asked the district court to include a "termination-upon-cohabitation" clause in the Amended Judgment. The district court did not do so, and its refusal to do so was not raised as an issue in the prior appeal. Obviously, Duane contemplated Loretta's future live-in relationship. Thus, a reduction in Duane's spousal support obligation is not warranted under a theory of change of circumstances.

[¶ 19] Furthermore, Duane merely alleges Loretta's live-in relationship reduces her financial needs. The party claiming a material change in circumstances has occurred bears the burden of proof. *Wheeler*, 548 N.W.2d at 30. A "[m]aterial change [is] something [that] substantially affects the *financial abilities or needs* of a party." *Id.* (Emphasis added). (Quotation and citation omitted). Duane concludes the change is material because Loretta is sharing expenses with her cohabitant. This argument assumes a decreased need automatically occurs when a recipient spouse cohabits. We are not prepared to make such an assumption without evidence establishing a material change in financial needs has actually occurred. *See Myhre v. Myhre*, 296 N.W.2d 905, 909 (S.D. 1980) (refusing to assume decreased need automatically occurs when a recipient spouse cohabits). The district court's finding that nothing has changed since the original decree is not clearly erroneous.

### III

[¶ 20] Loretta R. Cermak claims the district court erred in refusing to award her attorney's fees. We will not overrule a district court's decision regarding attorney's fees unless the complaining party establishes abuse of discretion. *Lill v. Lill*, 520 N.W.2d 855, 858 (N.D.1994). The dominant concern in awarding attorney's fees is the financial need of the party seeking the award and the other party's ability to pay. *Id.* To establish the district court abused its discretion, Loretta merely states Duane will always "out

---

6. In *Van Gorder*, the Wisconsin Supreme Court addressed a similar Wisconsin law prohibiting open cohabitation and association with a person known not to be a spouse under circumstances which imply sexual intercourse. *Van Gorder v. Van Gorder*, 110 Wis.2d 188, 327 N.W.2d 674, 679 (1983) (referring to *Wis. Stat. Ann.* § 944.20(3) which was later repealed by the 1983 legislature). *See* 1955 Wis. Laws Ch. 696, § 944.20(3); 1983 Wis. Laws Act 17, § 7 (repealing subsection 3). The majority in *Van Gorder* noted "[t]hese provisions are intended to be en-

forced through police investigations and prosecutorial complaint with designated criminal sanctions. They have not been referenced by the legislature into The Family Code." *Id.* (Quotation omitted). *Cf. Baker v. Baker*, 1997 ND 135, ¶ 11, n. 1, 566 N.W.2d 806 (discussing but not deciding whether a cohabitation clause is enforceable) and *Abbott v. Abbott*, 282 N.W.2d 561, 565 (Minn.1979) (reasoning a former husband has no legal standing to challenge socially disapproved conduct on moral grounds).

earn" her. Loretta fails to point to any other facts to establish she is in need. The fact one party will always make more than the other does not alone demonstrate need. Therefore, Loretta has failed to establish the district court abused its discretion in deciding each party should pay their own attorney's fees.

[¶ 21] The Order is affirmed.

[¶ 22] MESCHKE, MARING, NEUMANN and SANDSTROM, JJ., concur.